# EXHIBIT A

## AGREEMENT TO CONVEY BY DEED IN LIEU OF FORECLOSURE AND JOINT ESCROW INSTRUCTIONS

THIS AGREEMENT TO CONVEY BY DEED IN LIEU OF FORECLOSURE AND JOINT ESCROW INSTRUCTIONS (the "**Agreement**") is made as of January ____, 2010 by and among (i) MIDWEST BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED NOVEMBER 17, 2003 AND KNOWN AS TRUST NUMBER 03-1-8194 ("**Trustee**"), (ii) MBC III, LLC, a Delaware limited liability company and the beneficiary of Trustee ("**MBC**") (Trustee and MBC are sometimes hereinafter collectively referred to as "**Borrower**"), (iii) ANTHONY MONTALBANO ("**Guarantor**"), and (iv) FIRST MIDWEST BANK, an Illinois banking corporation ("**Lender**").  This Agreement also constitutes the joint escrow instructions of Borrower and Lender to CHICAGO TITLE INSURANCE COMPANY, a Missouri corporation (the "**Title Company**"), for the escrow established pursuant to this Agreement (the "**Escrow**")

## RECITALS:

A.   Pursuant to the terms and conditions contained in that certain Loan and Security Agreement dated January 10, 2005, as modified by that certain Loan Modification Agreement dated as of November 30, 2007, executed by and among Borrower, Guarantor and Lender (the "**Loan Agreement**"), Lender made a loan to Borrower in the original principal amount of **TWO MILLION SEVEN HUNDRED FIFTY-SIX THOUSAND AND 00/100 DOLLARS** ($2,756,000.00) (the "**Loan**") in order for Borrower to finance the "Property" (as hereinafter defined).

B.   The Loan is evidenced by that certain Promissory Note dated January 10, 2005 in the original principal amount of $2,756,000.00 (the "**Note**") made by Borrower payable to the order of Lender.

C.   The Loan is secured by (i) that certain Mortgage, Assignment of Rents and Leases, Security Agreement, Financing Statement and Fixture Filing dated January 10, 2005 executed by Borrower to and for the benefit of Lender and recorded on January 28, 2005 with the Recorder of Deeds of Kendall County, Illinois (the "**Recorder's Office**") as Document No. 200500002790 (the "**Mortgage**"), which Mortgage encumbers certain real property owned by Trustee and legally described on **Exhibit "A"** attached to and made a part of this Agreement (the "**Land**"); (ii) that certain Personal Guaranty dated January 10, 2005 made by Guarantor in favor of Lender (the "**Loan Guaranty**"); and (iii) certain other loan documents (the Loan Agreement, the Note, the Mortgage, the Loan Guaranty and the other documents evidencing, securing and guarantying the Loan, in their original form and as amended, are sometimes collectively referred to in this Agreement as the "**Loan Documents**").

D.   Borrower is currently in default in payments of interest and other sums due under the Loan (the "**Default**").

E.   Borrower and Guarantor acknowledge that as a result of the Default, Lender has the right to immediately enforce payment by Borrower and Guarantor of the Loan and to

- 1 -

84980 v2

immediately enforce the security interest in and lien on the Land, and to exercise all other remedies provided to it under the Loan Documents at law, in equity or by statute against Borrower and Guarantor.

      **F.**      The principal balance of the Note remaining due as of September 22, 2009 is $1,310,581.12; the total accrued and unpaid interest thereon as of September 22, 2009 is $58,411.88; and the total amount of late charges as of September 22, 2009 is $812.29. Accordingly, the total amount due under the Note as of September 22, 2009 is $1,369,805.29. In addition, interest in the amount of $127.4176089 per day continues to accrue.

      **G.**      On August 19, 2009, Guarantor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code for the Northern District of Illinois, Case No. 09-30477 (the "**Bankruptcy Case**").

      **H.**      Borrower and Guarantor have requested that the parties resolve the Default by Trustee conveying the Property (as hereinafter defined) to Lender, or to a person or other entity designated by Lender (the "**Nominee**"), in lieu of foreclosure and in consideration for Lender's release and covenant not to sue Borrower and Guarantor, and other consideration, and specifically including the release by Lender of any and all claims Lender would otherwise be entitled to assert in the Bankruptcy Case. **[OPEN]**.

      **I.**      Lender wishes to accept the conveyance of the Property pursuant to this Agreement to avoid the necessity of litigation, foreclosure, the delays associated therewith and to avoid the delays associated with Borrower's statutory redemption rights, if any, with respect to the Property, and Lender acknowledges that the provisions of this Agreement directly benefit Lender in this regard.

      **J.**      Borrower and Guarantor acknowledge that the consideration to be provided by Lender to Borrower and Guarantor under this Agreement is of direct and substantial benefit to Borrower and Guarantor and constitutes fair and adequate consideration and reasonably equivalent value for Borrower and Guarantor to enter into this Agreement and for Trustee to transfer the Property to Lender or the Nominee.

      **K.**      Borrower and Guarantor believe that the fair market value of the Property does not exceed the total of the outstanding unpaid principal of and interest accrued and unpaid on the Loan and all other outstanding indebtedness under the Loan Documents based on the written appraisal conducted for the Bank in September 2009 by Holcer and Company, a copy of which has been provided to Borrower and Guarantor (the "**Holcer Appraisal**").

      **L.**      As a result of negotiations in good faith by Borrower, Guarantor and Lender, said parties have reached certain agreements whereby, among other things, (i) Borrower will deliver to Lender or the Nominee a trustee's deed to the Property in lieu of foreclosure, together with a related bill of sale and assignment documents, and (ii) Lender or the Nominee will accept title to the Property, subject to the Loan Documents.

      **M.**      As a result of such negotiations, Borrower, Guarantor and Lender have also agreed that Borrower and Guarantor will release Lender, and Lender will covenant not to sue

84980 v2

under the Loan Documents and will release Borrower and Guarantor from all claims under the Loan Documents.

NOW THEREFORE, in consideration of the foregoing and of the mutual promises set forth herein, the parties agree as follows:

## AGREEMENT:

1. **Incorporation of Recitals**. The Recitals are hereby incorporated herein as if fully set forth in this **Section 1**.

2. **Conveyance to Lender or Nominee**. Subject to the conditions and on the terms contained in this Agreement, Borrower and Guarantor agree to execute and deliver to Lender the documents hereinafter identified to convey to Lender, or, if so directed by Lender, its Nominee, and to consummate the transactions herein described, free of any right of redemption or other right or interest of Borrower or Guarantor, or any other party claiming by or through Borrower or Guarantor, all of Borrower's or Guarantor's right, title and interest, without recourse or liability to Borrower or Guarantor, on a quitclaim basis, AS IS WHERE IS, in and to the Land and the following:

   (a) **Land Rights**. The Land and all rights, privileges, easements and appurtenances to the Land owned by Borrower on the Land, including, without limitation, all mineral rights, easements, rights-of-way, gas and hydrocarbons, and other appurtenances used or connected with the beneficial use or enjoyment of the Land; and all right, title and interest of Borrower in and to all streets, water courses or water bodies adjacent to, abutting or serving the Land (the "**Land Rights**").

   (b) **Improvements**. The improvements, if any, located upon the Land, and all other improvements, structures, elevators, fixtures, parking areas and other improvements of any kind or nature whatsoever located on the Land (the "**Building**") (the Land, the Land Rights and the Building are collectively the "**Real Property**").

   (c) **Personal Property**. All equipment, apparatus, machinery, cranes, appliances, furnishings, signs, site plans, surveys, soil and substrata studies, architectural renderings, plans and specifications, engineering plans and studies, floor plans and other plans or studies of any kind, leasing brochures, market studies, tenant data sheets and other supplies, all furniture, furnishings and carpeting; all heating, lighting, plumbing, electrical and air-conditioning fixtures and equipment, all hot water heaters, furnaces, heating controls, motors and boiler pressure systems and equipment; all shelving and partitions; all ventilating, incinerating, disposal, cleaning, snow removal and landscaping equipment; all storm and screen doors and windows; and all building supplies, fixtures and repair equipment; and fixtures, if any and if and to the extent owned by Borrower and/or Guarantor and used in connection with the operation and ownership of the Building or the Land (the "**Personal Property**").

   (d) **Intangible Property**. The following intangible property if any, and if and to the extent owned, controlled or held by Borrower and/or Guarantor between this date

- 3 -

84980 v2

and the "Closing" (as defined below) and if and to the extent assignable, solely in connection with the Real Property and the Personal Property, (i) all guaranties and warranties, including guaranties and warranties pertaining to construction of the Building (collectively the "**Warranties**"); (ii) all air rights, excess floor area rights and other development rights relating or appurtenant to the Land or the Building; (iii) all rights to obtain utility service in connection with the Building and the Land; and (iv) assignable licenses and other governmental permits, approvals and permissions relating to the Land, the Building and the operation of the Building (collectively the "**Permits**"), all rights to use any name by which the Property is commonly called; and all architectural, engineering and construction plans, tests, reports, drawings and specifications (all of the foregoing are collectively the "**Intangible Property**"). The conveyance of the Intangible Property shall be subject to all third party consents and neither Borrower nor Guarantor shall have any obligations to obtain such consents, provided however the receipt of any third party consents shall not be a condition to the closing contemplated under this Agreement.

(e)    **Assigned Contracts**.  All service, supply maintenance contracts and equipment leases listed on "**Exhibit "B"**" attached hereto and incorporated herein (the "**Assigned Contracts**"), if and to the extent assignable, and subject to all required consents provided however, the receipt of any third party consents shall not be a condition to the closing contemplated under this Agreement.

The Real Property, Personal Property, Intangible Property and Assigned Contracts are collectively referred to herein as the **"Property."**

3.    **Covenant Not to Sue**.  In consideration for the transfer of the Property by Borrower to Lender, or, at Lender's option, its Nominee, and subject to the terms, provisions, and conditions contained herein, at the Closing, Lender shall deliver a covenant not to sue (the "**Covenant Not to Sue**") to Borrower and Guarantor, which Covenant Not to Sue shall be in the form of "**Exhibit " D**" attached hereto. Additionally, Lender shall withdraw or amend any proof of claim filed in the Bankruptcy Case, as appropriate, to eliminate any claim for any amounts hereby released.

4.    **Closing Date; Delivery of Possession**.  Provided all of the terms, provisions and conditions contained in this Agreement to be satisfied on or before the Closing have been timely satisfied so as to provide for the closing of the transaction contemplated by this Agreement, including, without limitation, the vesting in Lender, or, at Lender's option, its Nominee, of good, valid, indefeasible and marketable fee simple title to the Real Property, subject only to the "Permitted Exceptions" (as hereinafter defined), the closing of the transaction contemplated by this Agreement (the "**Closing**") shall take place on _____, 2010 (the "**Closing Date**") at the offices of the Title Company. Upon the conveyance of the Property to Lender or its Nominee at the Closing, Borrower relinquishes any possessory rights with respect to the Property.

5.    **Owner's Policy**.  As a condition to Lender's obligation to close, Lender, or, at Lender's option, its Nominee, must be able to obtain at Lender's sole expense from the Title

84980 v2

Company an ALTA Form 2006 Owner's Title Insurance Policy for the Real Property (the "**Owner's Policy**") dated as of the Closing Date, naming Lender or its Nominee, as the case may be, as the insured thereunder, which Owner's Policy shall show fee simple title to the Property vested in Lender or its Nominee, as the case may be, subject only to the Permitted Exceptions. The Owner's Policy must:

> (a)   insure as separate parcels any easements appurtenant to the Real Property comprising the Land;
>
> (b)   be in the amount of the indebtedness evidenced by the Note which is outstanding on the Closing Date (or such lesser amount as Lender shall accept);
>
> (c)   contain full extended coverage insurance over all general exceptions set forth in the Owner's Policy other than matters which would be deleted by delivery of a current ALTA/ACSM plat of survey to the Title Company; and
>
> (d)   include the following endorsements:
>
>> (i)   ALTA Form 18-06 Single Tax Parcel Endorsement or ALTA Form 18.1-06 Multiple Tax Parcel Endorsement, as the case may be; and
>>
>> (ii)   ALTA Form 21-06 Creditor's Rights Endorsement.

6.   **Loan Policy Endorsements.**   As an additional condition to Lender's obligation to close, Lender shall receive, at Closing at Lender's sole expense, the following endorsements to its existing loan title insurance policy (the "**Loan Policies**") for the Real Property, which endorsements shall be dated as of the Closing Date (collectively the "**Loan Policy Endorsements**"):  (a) a date-down endorsement showing fee simple title in Lender or its Nominee, as the case may be, and insuring the lien of the Mortgage as a first priority encumbrance on the Real Property, subject only to the Permitted Exceptions; and (b) at Lender's option, a non-merger endorsement acceptable to Lender.

7.   **Escrow Instructions.**   The Title Company is hereby authorized and instructed to act in accordance with the provisions of this Agreement which, shall constitute the Title Company's escrow instructions.  If there is a conflict between the Title Company's general instructions and this Agreement, this Agreement shall control.  The parties shall each deposit such other instruments as are reasonably necessary to cause the Closing to occur and to consummate the transactions contemplated herein.

8.   **Closing Deliveries.**   The following deliveries and/or actions shall constitute the Closing and, to the extent provided in this Agreement, shall be effected through the Escrow and, if not specified in this Agreement to be deposited in the Escrow, shall be delivered to the party specified in this Agreement at or prior to the Closing.  Such deliveries, showings and actions shall be deemed to be taken simultaneously and no one of which shall be deemed completed until all of such deliveries, showing and actions have been completed.

84980 v2

(a) **Borrower's Deliveries.** On or before the Closing Date, Borrower shall execute and/or deliver or cause to be delivered to the Title Company and/or Lender, as applicable, the following:

(i) A Trustee's Deed for the Land (the "**Deed**") duly executed and acknowledged by Trustee and in recordable form conveying all of Trustee's right, title and interest in the Land to Lender or, at Lender's option, its Nominee, subject only to the Loan Documents and the other permitted exceptions set forth in the Deed and in Exhibit "B" to the Deed (collectively the "**Permitted Exceptions**"), in the form of **Exhibit "E"**.

(ii) A duly executed and acknowledged Bill of Sale (the "**Bill of Sale**") in the form of **Exhibit "F"**.

(iii) A duly executed assignment of the Intangible Property in the form of **Exhibit "H"** (the "**Assignment of Intangible Property**").

(iv) A duly executed Assignment and Assumption of Contracts in the form of **Exhibit "I"** (the "**Assignment of Contracts**");

(v) A Release Agreement in favor of Lender duly executed by Borrower and Guarantor in the form of **Exhibit "J"** (the "**Release of Lender**").

(vi) A FIRPTA affidavit and certificate stating that MBC is not a foreign person as defined by §1445 of the Internal Revenue Code.

(vii) A statement that there are no outstanding leasing commissions or property management fees.

(viii) An ALTA Loan and Extended Coverage Statement and a Personal Undertaking (Gap), as customarily required by the Title Company.

(ix) An appropriate exemption certificate with respect to transfer taxes of the municipality where the Land is located, and applicable exemption certificates with respect to transfer taxes of the State of Illinois and the County of Kendall (collectively the "**Exemption Certificates**").

(x) A duly executed Deed in Lieu of Foreclosure Certificate in the form of **Exhibit "L"**. **[OPEN]**

(xi) A certificate of good standing from the Secretary of State of Illinois for MBC, a certified copy of the resolution of the managers and members of MBC authorizing MBC to execute this Agreement and perform its obligations hereunder, a certificate of incumbency for the manager(s) or member(s) of Borrower executing this Agreement, a certified copy of the trust agreement of Trustee.

84980 v2

(xii) The original Assigned Contracts, Licenses, Permits, Warranties and Plans and Specifications (if available).

(xiii) A key code inventory and all keys to the Real Property, if applicable.

(xiv) Copies of all books, records, bills, invoices, and other documents related to the ownership, operation, management, use and maintenance of the Property if any or, for any such items not physically delivered to Lender at or prior to the Closing, a letter from MBC stating where such item is located and a letter from MBC, if any, addressed to the keeper of such items, directing such keeper to release all such items to Lender or its Nominee, as the case may be. Lender shall be responsible for the cost of reproducing the items to be delivered to Lender hereunder.

(xv) Evidence of termination (at no cost to Lender or its Nominee) of all (i) management, brokerage and leasing commission agreements, and (ii) service and maintenance contracts that are not Assigned Contracts.

(xvi) A settlement statement jointly prepared by MBC, Lender (or its Nominee) and the Title Company (the "**Settlement Statement**").

(xvii) All other deposits required to be made pursuant to the terms of this Agreement, and such other documents and instruments as may be reasonably necessary in order to consummate the transactions contemplated by this Agreement.

(b) At Closing, Lender shall execute and/or deliver to the Title Company the following:

(i) A duly executed Covenant Not to Sue.

(ii) A duly executed counterpart of the Assignment of Contracts.

(iii) A duly executed counterpart of the Assignment of Intangible Property.

(iv) A duly executed counterpart of the Assignment of the Bill of Sale.

(v) If required, the Exemption Certificates.

(vi) The Settlement Statement.

(vii) All other deposits required to be made by Lender pursuant to the terms of this Agreement, and such other documents and instruments as may be necessary in order to consummate the transactions contemplated by this Agreement.

84980 v2

(c) All items to be delivered pursuant to the provisions of this **Section 8** shall be subject to the approval of the parties. All deliveries and deposits of funds described in this **Section 8** shall be in good immediately available funds.

9. **Closing.** Provided that the parties have performed their obligations hereunder, including, without limitation, timely making the deliveries specified in **Section 8** above, the Title Company shall take the following actions in the following order on the Closing Date:

(a) Cause the Deed to be recorded;

(b) Issue to Lender the Owner's Policy and the Loan Policy Endorsements;

(c) Deliver to Lender executed originals of all documents, instruments and agreements required hereunder to be delivered to Title Company by or on behalf of any of the entities or persons comprising Borrower other than the Deed, including, without limitation, those items described in **Section 8(a)**; and

(d) Deliver to Borrower or Guarantor, as applicable, executed originals of all documents, instruments and agreements required hereunder to be delivered to Title Company by Lender, including, without limitation, those items described in **Section 8(b)**;

(e) Pay all closing costs and other charges required, necessary or advisable to cause the Closing to occur from funds deposited by Borrower and Lender; and

(f) Pay all additional amounts which the Title Company requires to be paid for the Owner's Policy and the Loan Policy Endorsements from funds deposited by or on behalf of Borrower and Lender.

10. **Expenses and Prorations.** Except as otherwise expressly provided in this Agreement, each party shall pay all of its own costs, expenses and fees associated or in any way pertaining to this Agreement, including, without limitation, the consummation of the transactions contemplated by this Agreement; provided, however, that Lender shall pay the cost of the Owner's Policy, the Loan Policy Endorsements and any related title search expenses, the costs of recording the Deed, and the costs of the Title Company's escrow fees. There shall be no prorations at Closing of any kind, be it for real estate taxes or revenues and expenses of the Land.

11. **Bankruptcy Court Approval.** This Agreement is subject to and conditioned upon the court in the Bankruptcy Case entering either i) an order authorizing Guarantor in his capacity as manager or managing member of the various entities in which he is the sole member or in which he has a controlling interest to effectuate deeds-in-lieu of foreclosure transactions, or ii) an order specifically authorizing Guarantor to effectuate the transaction contemplated in this Agreement.

12. **Representations, Warranties and Covenants of the Loan Parties.** Borrower represents and warrants to Lender, as follows:

84980 v2

(a) MBC (i) is an Illinois limited liability company in good standing under the laws of the State of Illinois; (ii) is duly authorized to transact business in the State of Illinois; and (iii) has all necessary power and authority to enter into this Agreement. All actions required to be taken by MBC to approve or authorize the execution of this Agreement and consummation of these transactions have been taken, and the execution of this Agreement and the consummation of the transactions contemplated hereby constitute the valid and binding obligation of MBC in accordance with its terms.

(b) Borrower has not received any written notices or citations for the violation of any zoning, building or other law, ordinance, regulation or directive of any governmental authority or authorities having jurisdiction relating to the Land or any part thereof.

(c) Borrower has not received any written notice and has no direct personal knowledge of any litigation, proceeding, condemnation or action pending or threatened against or relating to the Land which might adversely affect Lender or which questions the validity of this Agreement or any action taken or to be taken by Borrower pursuant hereto.

(d) Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby will constitute a violation of, be in conflict with or constitute a default under any term or provision of any agreement, instrument or lease to which Borrower or Guarantor is a party.

(e) Borrower has not instituted any action contesting the real estate taxes or assessments assessed against the Land.

(f) Borrower has not received any written notice from any of its insurer(s) to the effect that the Land (or any portion thereof) is not insured as required by the Loan Documents.

(g) Borrower has not sold, assigned, conveyed, transferred, mortgaged, hypothecated, pledged or encumbered the Land or any portion thereof except for the Mortgage.

(h) Neither MBC nor any of its managers or members has pledged any interests in the Land to any third party as collateral or security for any obligation of Borrower except in connection with the Loan. No consent of any lender of Borrower is required in order for Borrower to enter into or fulfill its obligations under this Agreement.

(i) Except for the Bankruptcy Case, no court having jurisdiction has entered a decree or order for relief with respect to Borrower or Guarantor in any involuntary case under any bankruptcy, insolvency or similar law or appointed a receiver, liquidator, assignor, custodian, trustee or similar official for such party, or ordered the winding up or liquidation of the affairs of Borrower, nor has Borrower or Guarantor filed a petition for relief or commenced a voluntary case under any bankruptcy, insolvency or similar law, consented to the entry of an order for relief in an involuntary case under any such law, or

84980 v2

consented to the appointment of or taking of possession by a receiver, liquidator, assignee, trustee, custodian or similar official for such party, nor has Borrower or Guarantor made any general assignment for the benefit of creditors.

(j) Neither Borrower nor Guarantor has manufactured or disposed of any hazardous substance on the Land, or stored or used any such hazardous substance on the Land. Neither Borrower nor Guarantor has received any notice from any federal, state or local governmental authority having jurisdiction over the Land alleging that the Land was not in compliance with any of such environmental laws, or was the subject of any federal, state or local investigation evaluating whether any remedial action is needed to respond to a release of any hazardous substance into the environment from the Land. Neither Borrower nor Guarantor has direct personal knowledge of any pending actions with respect to the Land under any environmental laws.

(k) Borrower (i) stipulates that it shall not assert that it has any claim or counterclaim of any nature whatsoever against Lender or its Nominee, (ii) stipulates that it shall not assert any defense of any kind whatsoever to the validity, effectiveness or enforceability of the Loan Documents, and (iii) stipulates it will not assert any defense of any kind whatsoever to the validity, effectiveness or enforceability of this Agreement or Lender's rights under this Agreement. Notwithstanding the foregoing, nothing in this section shall preclude Borrower from asserting any rights or defenses with respect to any breach of this Agreement or any default of this Agreement by Lender.

(l) Based on the Holcer Appraisal, Borrower believes that it is receiving reasonably equivalent value in consideration for entering into this Agreement, including Lender's agreement hereunder to accept less than full satisfaction of the obligations of Borrower to Lender under the Loan Documents, and to release any remaining claims against Borrower and Guarantor as provided hereunder.

(m) Neither Borrower nor Guarantor shall undertake any act to challenge (i) the validity, effectiveness or enforceability of this Agreement or any transactions contemplated by this Agreement, and/or (ii) any right, payment or benefit provided to Lender under this Agreement, unless Lender is hereafter in breach of its provisions.

(n) Neither Borrower nor Guarantor shall take any steps to interfere with, impede, delay or prevent the implementation of this Agreement, the transactions contemplated by this Agreement, or Lender's (or its Nominee's) ownership, enjoyment or disposition of the Land following the sale of the Land to Lender (or its Nominee) under this Agreement.

**13.** **Representations, Warranties and Covenants of Lender.** Lender represents and warrants to Borrower and Guarantor, in addition to all other representations, warranties and covenants of Lender contained in this Agreement or in the documents executed by Lender and pursuant to this Agreement, as follows:

84980 v2

(a) Lender has the full power and authority to execute, deliver and perform all of its respective obligations under this Agreement, the Closing Documents and the other documents to be executed and delivered by Lender pursuant to this Agreement;

(b) This Agreement has been, and the documents to be delivered by Lender hereunder have been or will be, duly authorized, executed and delivered by Lender and do not or will not violate the provisions of any agreements to which Lender is a party;

(c) This Agreement, the documents to be delivered by Lender hereunder and all documents, instruments and agreements referred to herein are, and upon execution by Lender will be, the valid and legally binding obligations of Lender and will be enforceable by Borrower and Guarantor in accordance with their respective terms;

(d) Lender is an Illinois banking corporation, duly formed and validly existing under the laws of the State of Illinois, and has the full power and authority to execute, deliver and perform its covenants, agreements and obligations under this Agreement. All necessary actions have been taken and all necessary consents and approvals have been received so that upon the execution and delivery to Borrower and Guarantor by Lender of this Agreement, the execution, delivery and performance of this Agreement will have been duly authorized with respect to Lender;

(e) The execution, delivery, and performance by Lender of its obligations under this Agreement do not and will not contravene or conflict with any law, order, rule, regulation, writ, injunction, or decree now in effect of any government, governmental instrumentality or court having jurisdiction over Lender;

(f) Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby will constitute a violation of, be in conflict with or constitute a default under any term or provision of any agreement, instrument or lease to which Lender is a party; and

(g) Lender is the holder of the Loan Documents (and all obligations arising thereunder including the obligations identified and set forth in Recital F of this Agreement) and Lender has not conveyed, encumbered or assigned any interest in any such documents.

14. **Representations and Warranties are Conditions Precedent.** The continued validity in all respects of the representations and warranties contained in **Section 12** and **Section 13** above shall be a condition precedent to the parties' obligations to close the transactions contemplated by this Agreement. In the event at any time prior to Closing either party hereto learns or has reason to believe that any of the aforesaid representations and warranties are no longer valid (or will not be valid at Closing, as the case may be), such party shall immediately notify the other party in writing, and in such notice, specify the factors rendering or likely to render such representations or warranties invalid. If any of said representations and warranties shall not be valid and correct prior to Closing in any material respect, this Agreement shall, at the sole election of the other party, be terminated and there shall be no further liability on the part of any party hereunder.

84980 v2

15. **Survival of Representations and Warranties.** All of the warranties and representations of Borrower contained in this Agreement or in any document or instrument delivered pursuant hereto shall survive the Closing. All of Lender's warranties and representations contained in this Agreement or in any document or instrument delivered pursuant hereto shall survive the Closing; provided, however, any claim against Lender or Borrower under this section not made in writing within six (6) months after the Closing shall be deemed waived.

16. **No Obligations of Lender to Third Parties.**

(a) Borrower acknowledges and agrees that (i) the consummation of the Closing shall neither create nor be deemed or construed as an assumption by Lender of any obligations on the part of Lender to third parties which have claims of any kind whatsoever against Borrower or any party comprising Borrower, with respect to the Land, or other assets, rights and claims to be assigned to Lender at Closing; and (ii) except as set forth in the Assignment, Lender does not assume or agree to discharge any liabilities pertaining to the Land.

(b) This Agreement is made and entered into for the sole protection and benefit of the parties hereto and no other person, person, entity or entities shall have any right of action hereon, right to claim any right or benefit from the terms contained herein, or be deemed a third party beneficiary hereunder.

17. **Avoidance.** The obligations of Borrower to repay to Lender all amounts for which it is legally obligated under the Loan Documents will be reinstated subject to all available defenses and claims if the Deed or any other document evidencing a conveyance of the Land to Lender is ever rendered void or is rescinded by operation of law, or if any payment made to Lender or its Nominee is ever cancelled, invalidated, rescinded, required to be disgorged, or otherwise set aside, by reason of any order arising out of any claim or proceeding initiated or commenced in favor of, against, on behalf of or in concert with Borrower, Guarantor or any person claiming by or through Borrower and/or Guarantor. The reinstatement of the obligations of Borrower to pay such sums will not operate to affect or alter the Release of Lender or the Covenant Not to Sue in favor of the Guarantor. The provisions of this **Section 17** shall expressly survive the Closing.

18. **Waivers; Modifications; Entire Agreement.**

(a) Each party hereto reserves the right to waive any of the conditions precedent to its respective obligations hereunder. No such waiver and no modifications, amendment, discharge or change of this Agreement, except as otherwise provided herein, shall be valid unless the same is in writing. No waiver of any particular provision waives any other provision and no waiver shall continue if revoked by the party which originally waived such provisions

(b) This Agreement (including all instruments executed pursuant hereto) contains the entire agreement among the parties relating to the transactions contemplated hereby, and all prior agreements, understandings, representations and statements, whether oral or written, are merged herein and superseded hereby.

- 12 -

19. **Absolute Conveyances Freely and Voluntarily Given.** Borrower acknowledges and agrees that the conveyance of the Land to Lender or its Nominee according to the terms of this Agreement shall be an absolute conveyance of all of the grantor's right, title, and interest in and to the Land, in fact as well as in form, and was not and is not now intended as a mortgage, trust conveyance, deed of trust, or security instrument of any kind; that Borrower has no further interest (including rights of redemption) or claims in and to the Land or to the proceeds and profits that may be derived thereof, of any kind whatsoever; and that in the execution of this Agreement, Borrower has acted freely and voluntarily and not under coercion or duress.

20. **No Merger.** The parties hereto acknowledge and agree that, subject to the provisions of the Covenant Not to Sue by Lender contemplated by this Agreement, all of the Loan Documents shall remain in full force and effect after the transactions contemplated by this Agreement have been consummated, including, without limitation, delivery of the Closing Documents to Lender or the Nominee. The parties hereto further acknowledge and agree that none of the interests of Lender or the Nominee in the Land under the conveyance provided for in this Agreement shall merge with the interest of Lender in the Land under the Mortgage. The acceptance by Lender or the Nominee of the Closing Documents shall not, subject to the provisions of Lender's Covenant Not to Sue, prejudice, limit, restrict or affect Lender's rights under the Loan Documents, or Lender's claim of priority under the Mortgage and the other Loan Documents over any other liens, claims or encumbrances of any kind whatsoever, and Lender reserves the right to foreclose the Mortgage and the other Loan Documents by judicial proceedings or other applicable law or otherwise enforce the Loan Documents. It is the express intention of each of the parties hereto (and all of the conveyances provided for in this Agreement shall so recite) that the interest of Lender in the Land shall not merge, but shall be and remain at all times separate and distinct and that the lien of Lender encumbering the Land created by certain of the Loan Documents shall be and remain at all times a valid and continuous lien on the Land.

21. **Relief from Bankruptcy.** In the event that Borrower shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*, as amended (the "**Bankruptcy Code**"), (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator, or (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustments, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, and such action causes Lender to seek necessary or appropriate relief, then (a) Lender shall thereupon be entitled to and Borrower irrevocably consents to the relief from any automatic stay imposed by Section 362 of Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided in this Agreement with respect to the Land and as otherwise provided by law, and Borrower hereby irrevocably waives any right to object to such relief; (b) Borrower waives its exclusive right pursuant to Section 1121(b) of the Bankruptcy Code to file a

84980 v2

plan of reorganization and irrevocably consents that Lender may file a plan immediately upon the entry of an order for relief if an involuntary petition is filed against Borrower or upon the filing of a voluntary petition by Borrower; (c) in the event that Lender shall move pursuant to Section 1121(d) of the Bankruptcy Code for an order reducing the 120 day exclusive period, Borrower shall not object to any such motion; and (d) Borrower waives any rights it may have pursuant to Section 108(b) of the Bankruptcy Code.

22.     **Representation Of Parties By Counsel.**  Each party has consulted with and has been fully and properly advised by counsel of his or its choice as to his or its respective rights and obligations with regard to the Loan Documents, this Agreement and the transactions contemplated by this Agreement.

23.     **Notices.**  Any notice, demand, request or other communication required or permitted to be given under this Agreement shall be deemed given upon the earlier to occur of (i) actual receipt if personally delivered, (ii) two (2) business days after being sent if such notice shall be deposited with a nationally recognized courier for overnight delivery, charges prepaid, (iii) transmitted by telecopy or email (provided that a copy is also mailed), or (iv) mailed, United States Registered or Certified mail, postage prepaid, return receipt requested, in each case addressed as follows:

If to Borrower:        c/o Montalbano Builders, Inc.
                       2208 Midwest Road
                       Oak Brook, Illinois 60523
                       Attention:     Anthony Montalbano
                       Telephone:_____
                       Facsimile:_____
                       E-mail:_____

With a copy to:        _____
                       _____
                       Suite _____

                       Attention:    _____
                       Telephone:    _____
                       Facsimile:    _____
                       E-mail:       _____

If to Lender:          First Midwest Bank
                       770 West Dundee Road
                       Arlington Heights, Illinois 60004
                       Attention: Mr. Lawrence Walther
                       Telephone: (847) 870-2527
                       Facsimile:  (847) 870-2588
                       E-mail: lawrence.walther@firstmidwest.com

- 14 -

      With a copy to:      Much Shelist
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60606
Attention:    Kurt M. Carlson, Esq.
Telephone:   312-521-2099
Facsimile:    312-521-2199
E-mail:       kcarlson@muchshelist.com

or at such other address as the party to be served notice may have furnished in writing to the party seeking or desiring to serve notice as a place for service of notice. Notices given in any other fashion shall be deemed effective only upon receipt.

    24.   **Relationship of Parties.** The parties hereto agree that nothing contained in this Agreement is intended or shall be construed to establish any of such parties as joint venturers or partners.

    25.   **Governing Law.** This Agreement shall be governed by and construed under the laws of the State of Illinois.

    26.   **Enforceability.** Wherever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

    27.   **Further Assurance.** The parties hereto and each of them agree at the time and from time to time to execute any and all documents reasonably requested by the others to carry out the intent of this Agreement.

    28.   **Captions.** The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Agreement or any of the provisions hereof.

    29.   **Binding Effect.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective officers, directors, managers, members, heirs, executors, administrators, legal representatives, successors and assigns.

    30.   **Exhibits.** All Exhibits or schedules attached hereto are hereby made a part hereof and incorporated herein.

    31.   **No Other Promises or Inducements.** There are no promises or inducements which have been made to any signatory hereto to cause such signatory to enter into this Agreement other than those which are set forth in this Agreement.

84980 v2

32. **Joint Preparation.** The preparation of this Agreement has been a joint effort by all of the parties hereto, and the resulting document shall not, solely as a matter of judicial construction, be construed more severely against Lender than any of the other parties.

33. **Counterparts.** This Agreement may be executed in counterparts. Each such counterpart shall be deemed an original hereof and all such executed counterparts shall together constitute one and the same instrument, which instrument shall, for all purposes, be deemed to be executed sufficiently by such signed counterpart.

34. **WAIVER OF JURY TRIAL.** THE PARTIES HERETO KNOWINGLY WAIVE ANY RIGHT EITHER OF THEM MAY HAVE TO A TRIAL BY JURY IN ANY CLAIM, PROCEEDING, DISPUTE OR ACTION (INCLUDING, WITHOUT LIMITATION, ANY DEFENSE, COUNTERCLAIM, SET OFF, CROSS-CLAIM OR THIRD PARTY ACTION RELATED THERETO) ARISING BY, THROUGH OR UNDER THIS AGREEMENT, THE DEED, THE LOAN DOCUMENTS, ANY OF THE DOCUMENTS EXECUTED OR DELIVERED UNDER OR PURSUANT TO THIS AGREEMENT, AND WHETHER IN CONTRACT, TORT OR OTHERWISE. THIS WAIVER IS A MATERIAL INDUCEMENT FOR LENDER TO ENTER INTO THIS AGREEMENT.

35. **"AS IS" TRANSFER.** EXCEPT FOR THE EXPRESS REPRESENTATIONS AND WARRANTIES OF BORROWER SET FORTH HEREIN, LENDER ACKNOWLEDGES AND AGREES THAT IT WILL BE RECEIVING THE PROPERTY BASED SOLELY UPON ITS INSPECTIONS AND INVESTIGATIONS OF THE PROPERTY AND THAT LENDER WILL BE RECEIVING THE PROPERTY "AS IS" AND "WITH ALL FAULTS", BASED UPON THE CONDITION OF THE PROPERTY AS OF THE DATE OF THIS AGREEMENT, AND LOSS BY FIRE OR OTHER CASUALTY OR CONDEMNATION EXCEPTED AND THAT NEITHER BORROWER NOR GUARANTOR MAKE ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF CONDITION, HABITABILITY, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, IN RESPECT OF THE PROPERTY. The provisions of this **Section 35** shall survive the Closing Date.

Remainder of Page Intentionally Left Blank—Signature Page Follows

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of the date set forth above.

**TRUSTEE**:

MIDWEST BANK AND TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED NOVEMBER 17, 2003 AND KNOWN AS TRUST NUMBER 03-1-8194

By:_____
Its:_____

**MBC:**

MBC III, LLC, a Delaware limited liability company

By:_____
    Anthony Montalbano, Member

**GUARANTOR:**

_____
    Anthony Montalbano

**LENDER:**

FIRST MIDWEST BANK, an Illinois banking corporation

By:_____
Its:_____

## ACCEPTANCE BY TITLE COMPANY

The Title Company acknowledges receipt of the foregoing Agreement and accepts the instructions contained therein.

CHICAGO TITLE INSURANCE COMPANY,<br>
a Missouri corporation<br>
<br>
By: _____<br>
Name:_____<br>
Title:_____