## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| ANTHONY P. MONTALBANO, SR. | ) | Case No. 09 B 30477 |
| | ) | |
| Debtor. | ) | Honorable Susan Pierson Sonderby |

### NOTICE OF APPLICATION

To:  Attached Service List

**PLEASE TAKE  NOTICE** that on Tuesday, the 20th day of December, 2010, at the hour of 10:00 a.m., we shall appear before the Honorable Susan Pierson Sonderby, United States Bankruptcy Judge for the Northern District of Illinois, or any Judge sitting in her place and stead, in courtroom 642 of the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present the *Third and Final Application of Adelman & Gettleman, Ltd., Counsel to the Debtor, for the Allowance and Payment of Compensation, Reimbursement of Expenses and Related Relief* (the **"Application"**), a copy of which is attached hereto and hereby served upon you.

> HOWARD L. ADELMAN, ESQ. (ARDC #0015458)
> HENRY B. MERENS, ESQ. (ARDC #6181695)
> STEVEN B. CHAIKEN, ESQ. (ARDC #6272045)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Boulevard, Suite 1050
> Chicago, Illinois 60604
> 312/435-1050

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of this Notice of Application and the Application referred to herein have been served upon the persons listed on the attached service list as indicated on the 29th day of November, 2011.

> _____/s/ Steven B. Chaiken_____
> Steven B. Chaiken, Esq.

92597.1

## SERVICE LIST

### VIA ECF

William T. Neary, Esq.
  USTPRegion11.ES.ECF@usdoj.gov

Michael A. Axel, Esq.
  michael_axel@keybank.com
  maaxel2003@yahoo.com

Joseph A. Baldi, Esq.
  jabaldi@baldiberg.com
  jabaldi@ameritech.net
  jmanola@baldiberg.com
  jabaldi@ameritech.net
  jbaldi@ecf.epiqsystems.com

Ronald Barliant, Esq.
  ronald.barliant@goldbergkohn.com

Courtney E. Barr, Esq.
  cbarr@lockelord.com

Leslie Allen Bayles, Esq.
  leslie.bayles@bryancave.com

Thomas A. Brown, Esq.
  tabsbltd@aol.com

Lydia Bueschel, Esq.
  Lbueschel@robinsoncurley.com

Kurt M. Carlson, Esq.
  kcarlson@muchshelist.com,
  dmyer@muchshelist.com

Miles V. Cohen, Esq.
  mcohen@skcounsel.com

Alex Darcy, Esq.
  Adarcy@askounisdarcy.com
  jham@askounisdarcy.com

Aaron Davis, Esq.
  aaron.davis@bryancave.com

Megan A. Drefchinski, Esq.
  mdrefchinski@collinslaw.com
  ktaylor@collinslaw.com

D R Edwards, Esq.
  dredwards@ggulaw.com

Edward P. Freud, Esq.
  epfreud@rwrlaw.com

Kathryn Gleason, Esq.
  USTPRegion11.es.ecf@usdoj.gov
  kathryn.m.gleason@usdoj.gov

Kenneth S. GoodSmith, Esq.
  kgoodsmith@ggulaw.com

Fred R. Harbecke, Esq.
  fredrharbecke@sbcglobal.net

Richard L. Hirsh, Esq.
  bk-lawfirm@sbcglobal.net

Danielle Juhle, Esq.
  danielle.juhle@goldbergkohn.com
  kristina.bunker@goldbergkohn.com

Eleonora Khazanova, Esq.
  ekhazanova@askounisdarcy.com

Ryan O. Lawlor,, Esq.
  r_lawlor@vedderprice.com

Patrick S. Layng
  USTPRegion11.es.ecf@usdoj.gov

Steven A. Levy, Esq.
  steven.levy@goldbergkohn.com
  bonnie.maciejewski@goldbergkohn.com

Eric S. Prezant, Esq.
  eric.prezant@bryancave.com

Brian Raynor, Esq.
  braynor@lockelord.com

Patrick F. Ross, Esq.
  pfross@uhlaw.com
  jrsukusky@uhlaw.com
  keedeus@uhlaw.com
  TEFiester@uhlaw.com

James B. Sowka, Esq.

jsowka@seyfarth.com

William W. Thorsness, Esq.
Wthorsness@vedderprice.com


Donna B. Wallace, Esq.
Dbwallace@ameritech.net

Martin J. Weisenburger, Esq.
Martt1@softhome.net

## VIA REGULAR U.S. MAIL

Department of the Treasury
Internal Revenue Service
Centralized Insolvency Operations
PO Box 21126
Philadelphia, PA  19114

Anthony P. Montalbano, Sr.
1916 Midwest Club Parkway
Oak Brook, IL  60523-2525

## VIA MESSENGER DELIVERY

Kathryn M. Gleason, Esq.
Office of the United States Trustee
219 S. Dearborn St., Room 873
Chicago, IL 60604
Fax: (312) 886-5794

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| ANTHONY P. MONTALBANO, SR. | ) | Case No. 09 B 30477 |
| | ) | |
| Debtor. | ) | Honorable Susan Pierson Sonderby |
| | ) | |
| | ) | **Hearing Date and Time:** |
| | ) | **December 20, 2011 at 10:00 a.m.** |

## THIRD AND FINAL APPLICATION OF ADELMAN & GETTLEMAN, LTD., COUNSEL TO THE DEBTOR, FOR ALLOWANCE AND PAYMENT OF COMPENSATION, REIMBURSEMENT OF EXPENSES AND RELATED RELIEF

HOWARD L. ADELMAN, ESQ. (ARDC #0015458)
HENRY B. MERENS, ESQ. (ARDC #6181695)
STEVEN B. CHAIKEN, ESQ. (ARDC #6272045)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
(312) 435-1050

Attorneys for Debtor

92607.1

## TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    LEGAL SERVICES RENDERED . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

         A.    ADMINISTRATIVE MATTERS . . . . . . . . . . . . . . . . . . . . . . . 10
         B.    1801 SOUTH MEYERS ROAD . . . . . . . . . . . . . . . . . . . . . 18
         C.    DIP FINANCING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
         D.    ASSET SALE EFFORTS . . . . . . . . . . . . . . . . . . . . . . . . 20
         E.    DEEDS-IN-LIEU . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
         F.    PLAN AND DISCLOSURE STATEMENT . . . . . . . . . . . . . 25
         G.    FEE PETITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

III.   SERVICES RENDERED SUBSEQUENT TO THE APPOINTMENT DATE . . . . . . . 31

IV.    STANDARDS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
       Form of Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
         1.    Itemized Daily Entries . . . . . . . . . . . . . . . . . . . . . . . . 33
         2.    Telephone Conferences . . . . . . . . . . . . . . . . . . . . . . . 34
         3.    Meetings and Office Conferences . . . . . . . . . . . . . . . . 34
         4.    Drafting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
         5.    Legal Research . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
         6.    Minimum Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
         7.    Lumping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

V.     BILLING JUDGMENT AND AVOIDANCE OF DUPLICATION OF SERVICES . . . 35
         A.    Individual Responsibility . . . . . . . . . . . . . . . . . . . . . . . 37
         B.    Court Appearances and Meetings . . . . . . . . . . . . . . . . . 38
         C.    Appropriate Level of Skill . . . . . . . . . . . . . . . . . . . . . . 38
         D.    Legal Research . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
         E.    Document Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

VI.    QUALIFICATIONS OF MOVANT; PRECLUSION OF EMPLOYMENT DUE TO
       ACCEPTANCE OF THIS CASE; AND COST OF COMPARABLE SERVICES . . . . 39

VII.   RECAPITULATION OF SERVICES RENDERED DURING FINAL FEE PERIOD . 42

VIII.  MOVANT'S STATEMENT PURSUANT TO §§ 329 AND 504 OF THE
       BANKRUPTCY CODE AND BANKRUPTCY RULE 2016 . . . . . . . . . . . . . . . 43

IX.    NOTICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

X.     CONCLUSION AND REQUEST FOR ALLOWANCE AND PAYMENT OF FINAL
       COMPENSATION AND REIMBURSEMENT OF EXPENSES . . . . . . . . . . . . . 44

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| ANTHONY P. MONTALBANO, SR. | ) | Case No. 09 B 30477 |
| | ) | |
| Debtor. | ) | Honorable Susan Pierson Sondersby |
| | ) | |
| | ) | **Hearing Date and Time:** |
| | ) | **December 20, 2011 at 10:00 a.m.** |

### THIRD AND FINAL APPLICATION OF ADELMAN & GETTLEMAN, LTD., COUNSEL TO THE DEBTOR, FOR THE ALLOWANCE AND PAYMENT OF COMPENSATION, REIMBURSEMENT OF EXPENSES AND RELATED RELIEF

TO:   THE HONORABLE SUSAN PIERSON SONDERBY,
      UNITED STATES BANKRUPTCY JUDGE:

Now come Howard L. Adelman, Henry B. Merens and Steven B. Chaiken on behalf of

Adelman & Gettleman, Ltd. (**"Movant"**), counsel to Anthony P. Montalbano, Sr., debtor herein

(the **"Debtor"** or **"Montalbano"**), and request the entry of an order for the allowance and

payment of final compensation and reimbursement of ordinary and necessary expenses incurred

in connection therewith as counsel to the Debtor and Debtor-in-Possession during the Chapter 11

case (the **"Chapter 11 Case"**) pursuant to Section 330 of the United States Bankruptcy Code (the

**"Code"**), and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy**

**Rules"**), and in support thereof, respectfully state as follows:

91633

## I. **INTRODUCTION**[1]

This final application encompasses the eighteen (18) month period from August 19, 2009,

the date of the commencement of the Chapter 11 Case, through February 16, 2011 (the "**DIP**

**Period**"), the date that the Court entered an order appointing a Chapter 11 trustee (the

"**Appointment Date**").[2]

Movant previously filed two applications for the allowance of interim compensation in

the Chapter 11 Case.  On December 3, 2009, Movant submitted its initial application for

compensation (the "**First Interim Fee Application**") [Docket No. 67] in the Chapter 11 Case,

requesting allowance of $132,255.00 in fees and $1,492.62 in expenses for the period of August

19, 2009 (the "**Petition Date**") through October 31, 2009 (the "**First Interim Period**"). This

Court allowed the First Interim Fee Application and awarded Movant fees in the amount of

$131,990.00 and reimbursement of expenses in the amount of $1,492.62 pursuant to an Order

entered by the Court on December 17, 2009 (the "**First Interim Approval Order**")[Docket No.

72].[3]  The First Interim Fee Application and the First Interim Approval Order are incorporated

---

[1] Movant was retained as counsel to the Debtor pursuant to that certain Order Authorizing Employment Of Attorneys entered on September 9, 2009 [Docket No. 24].

[2] Though not compensable under Section 330 or Section 331 of the Code, Movant has spent considerable time since the Appointment Date rendering assistance to Joseph Baldi, the court appointed Chapter 11 trustee (the "**Trustee**").  As further illustrated in Section III of this Final Application, Movant worked closely with the Trustee to achieve a seamless transition, and to further the many inroads Movant had accomplished prior to the Appointment Date.

[3] On July 8, 2009, Movant received an advance payment retainer in the amount of $50,000.00 (the "**Prepayment**") from the children of the Debtor, Anthony Montalbano, Jr., and Michele Montalbano, to be applied toward services performed prior to the filing of the Chapter 11 Case, with any remaining balance to be applied for services rendered and to be rendered in the Chapter 11 Case.  After applying the Prepayment against the fees and expenses incurred by Movant prior to the Petition Date, there remained a sum of $10,278.90 available for services rendered during the Chapter 11 Case.  This remaining portion of the Prepayment was applied in connection with the interim compensation awarded for the First Interim Period.

91633                                     2

herein by reference. In addition, attached hereto as **Exhibit A** is a summary, by category, of the

hours of legal services expended and fees incurred by Movant during the First Interim Fee Period

(the "**First Interim Fee Summary**").

On November 17, 2010, Movant submitted its second application for compensation (the

"**Second Interim Fee Application**") [Docket No. 189] in the Chapter 11 Case, requesting

allowance of $185,673.00 in fees and $2,559.50 in expenses for the period of November 1, 2009

through July 31, 2010 (the "**Second Interim Period**").[4] This Court allowed the Second Interim

Fee Application in its entirety and awarded Movant fees in the amount of $185,673.00 and

reimbursement of expenses in the amount of $2,559.50 pursuant to an Order entered by the Court

on December 3, 2010 (the "**Second Interim Approval Order**") [Docket No. 193]. The Second

Interim Fee Application and the Second Interim Approval Order are incorporated herein by

reference. In addition, attached hereto as **Exhibit B** is a summary, by category, of the hours of

legal services expended and fees incurred by Movant during the Second Interim Fee Period (the

"**Second Interim Fee Summary**").

This Final Application represents Movant's third and final request for compensation in

the Chapter 11 Case. As reflected herein, Movant has expended 354 hours of professional legal

services during the period of August 1, 2010 through the Appointment Date (the "**Final Fee**

**Period**") and has incurred outstanding fees in the amount of $115,682.00 and expenses in the

---

[4] The full amount of fees incurred during the Second Interim Fee Application exceeded the
actual amount sought by $20,000. As an accommodation to the estate, and while reserving the right to
seek compensation for this amount in the event of an objection, Movant voluntarily reduced the fees
sought for the Second Interim Period by the amount of $20,000.

91633                                                     3

amount of $2,053.13.[5]  As an accommodation to the estate, and to account for any duplication of effort, Movant is agreeing to voluntarily discount the fees incurred during the Final Fee Period in the amount of $10,000.  After applying this discount, the amount of fees which Movant is seeking in connection with the Final Fee Period is $105,682.00.

In total, Movant requests final allowance of: (i) the fees incurred and expenses paid during the First Interim Period as awarded in the First Interim Approval Order; (ii) the fees incurred and expenses paid during the Second Interim Period as awarded in the Second Interim Approval Order; and (iii) the fees incurred and expenses paid during the Final Fee Period.  The cumulative amount of all fees being sought as final compensation, after applying voluntary discounts totaling $30,000, is $423,345.00 (the "**Aggregate Fee Award**"); and the cumulative amount of reimbursement of expenses being sought in the total amount is $6,105.25 (the "**Aggregate Expense Award**").  Movant requests payment in the net amount of $107,735.13, which represents the Aggregate Fee Award and the Aggregate Expense Award, less payments received and prepayments applied to date.

Movant submits that the efforts put forth and the results achieved during the DIP Period amply support the allowance and payment of all compensation requested herein. During the DIP Period, Movant was able to, among other things: (i) accomplish the sale of certain commercial property under arduous circumstances, generating net proceeds in the amount of $835,000 for the estate; (ii) negotiate DIP Financing with absolutely no residual exposure to the estate; (iii) set a process in place for effectuating deeds in lieu of foreclosure and waivers of deficiency claims (the "**DIL Transactions**") with respect to parcels of real estate having no value to the estate,

---

[5]  The services rendered and expenses incurred during the Final Fee Period are hereafter described in depth.

91633                                4

resulting in the reduction of creditor claims during the DIP Period by an amount in excess of

$16,000,000, and an additional amount in excess of $9,000,000 after the Appointment Date; (iv)

identify assets available for collection and distribution and create the requisite infrastructure,

including assisting the Debtor's accounting professionals in obtaining millions of dollars in tax

refunds (the "**Refunds**"); and (v) guide the Debtor through the multitude of administrative tasks

imposed upon him by virtue of being a debtor-in-possession.

While simultaneously striving to reduce the universe of claims against the estate and to

maximize assets available for distribution, Movant drafted a plan of reorganization to serve as

the operative mechanism for achieving the desired exit strategy in the Chapter 11 Case (the

"**Plan**").  Movant also prepared the disclosure statement (the "**Disclosure Statement**"), which,

along with multiple exhibits, contained the disclosures mandated by Section 1125 of the Code,

such that the creditors of the estate would be able to make an informed decision as to the merits

of the Plan.  Movant and the Debtor shared the view that a consensual Plan optimized the

prospects for concluding the Chapter 11 Case at the earliest possible juncture; and diligently

pursued this objective.

By and large through the First Interim Period and the Second Interim Period, Movant was

able to make definitive progress in the Chapter 11 Case with minimal controversy.  Movant

worked closely with the Office of the United States Trustee (the "**UST**") throughout the Chapter

11 Case to insure that the UST was comfortable with the nature and the course of the actions

taken and consistently previewed for the UST the substance and scope of the court relief to be

sought by the Debtor.

91633                                                5

Movant and the Debtor conferred regularly with creditors and their counsel, and had

garnered a wellspring of support for the pathway they had forged toward the conclusion of the

proceeding.  Unfortunately, the efforts of Movant and the Debtor to confirm the Plan were

eventually forestalled.

During the Second Interim Period, the Bank of America, N.A. (the "**Creditor**") filed a

Motion to Convert the Chapter 11 Case to a case under Chapter 7, or alternatively for the

Appointment of a Trustee (the "**Initial Conversion Motion**").  After reviewing the grounds set

forth in the Initial Conversion Motion, Movant was confident it could work with the Creditor and

its counsel to overcome their objections to confirmation.  Movant immediately reached out to

counsel for the Creditor.  Rather than test the merits of the Initial Conversion Motion, Movant

instead proposed that the Debtor and the Creditor explore reaching a common ground for

resolving the Initial Conversion Motion and concluding the Chapter 11 Case.  To foment a

favorable environment and to level the playing field, Movant placed on hold the push towards

confirmation of the Plan, while discussions with the Creditor and its counsel ensued.

During the Final Fee Period, Movant continued making positive advancements in

multiple aspects of the proceeding and persisted in its campaign to address and assuage the

concerns of the Creditor.  Amidst these efforts, the Creditor raised additional issues that

pertained to the Refunds and the respective rights of the Debtor and his spouse in and to these

monies.  The Creditor tendered a letter dated October 11, 2010 (the "**Creditor Letter**") and

thereafter filed its Motion for Leave to Obtain Derivative Standing to Pursue Causes of Action on

Behalf of the Bankruptcy Estate with Regard to Certain Tax Refund Proceeds (the "**Derivative

Standing Motion**"); and the Amended Motion for Entry of an Order: (1) Converting the

Debtor's Chapter 11 Case to Chapter 7; or (2) Appointing a Chapter 11 Trustee Pursuant to 11

U.S.C. §§1112(b) or §§ 1104(a) (the "**Amended Conversion Motion**")(together with the

Derivative Standing Motion, the "**Creditor Motions**").[6]

The Creditor Letter and the Creditor Motions ultimately placed Movant and the Debtor in

an untenable position.  On the one hand, if the disposition of the Refunds or the T by E Transer

was subject to question and it would prove necessary to adjudicate potential claims, there were

procedural safeguards available to preserve the continued viability of the Plan for the benefit of

the estate and its creditors.  On the other hand, if the byproduct of continuing the confirmation

process would be to place the focus of the contested confirmation hearing on the conduct of the

Debtor and Movant, then arguably the overriding purpose of the Plan would be defeated, and it

made little sense to continue the efforts at confirmation.  As the Court is aware, Movant and the

Debtor ultimately concluded that to proceed toward confirmation under these circumstances

would likely detract from the substantial gains which Movant and the Debtor had thus far

achieved during the Chapter 11 Case.  Consequently, the Debtor consented to the appointment of

the Trustee in order to preserve these gains.

In scrutinizing the time spent responding to the Creditor Letter and the Creditor Motions,

Movant has endeavored to distinguish the services which were necessary and appropriate to

further the administration of the Chapter 11 Case, and those services which should not be

surcharged against the estate.  As hereinafter discussed, Movant has requested only a portion of

these fees, having written off much of the time spent in fairness to all concerned.  In addition, as

noted above, Movant has discounted its fees by $10,000 to account for any duplication of effort

---

[6] The Creditor also questioned the prior transfer into tenancy by the entireties of the residence of
the Debtor and his non-debtor spouse (the "**T by E Transfer**")

91633                                               7

in services rendered during the Final Fee Period.  The nature and extent of these voluntary

accommodations further enhances the reasonableness of the fees which are requested to be

allowed and should eliminate any potential controversy over the scope of services for which

allowance is presently being sought.

## II.
## <u>LEGAL SERVICES RENDERED</u>

For ease of reference, Movant has identified and set forth seven (7) categories of legal

services: (1) Administrative; (2) 1801 South Meyers Road; (3) DIP Financing; (4) Asset Sale

Efforts; (5) Deeds in Lieu; (6) Plan and Disclosure Statement; and (7) Fee Petition.  Each

category contains a narrative of the matters involved; a general description of the tasks

performed; detailed time records in chronological order, with each attorney's time described

therein, the nature and purpose of such entries; and the result achieved or benefit to the estate, as

required by <u>In re Wildman</u>, 72 B.R. 700 (Bankr. N.D. Ill. 1987); <u>In re Pettibone Corporation</u>, 74

B.R. 293 (Bankr. N.D. Ill. 1987); and <u>Matter of Continental Illinois Securities Litigation</u>, 962

F.2d 566 (7th Cir. 1992).

To facilitate the review and assessment by the Court of the overall reasonableness of the

fees incurred by Movant during the Final Fee Period, and the benefits conferred thereby, Movant

has crafted the narrative descriptions hereafter appearing in the instant application. Movant has

also summarized by category the hours expended and the fees incurred during the Final Fee

Period.[7]

---

[7] Given the voluminous nature of the time entries for the First Interim Period and the Second
Interim Period and the prior scrutiny of these entries by the Court, Movant felt it would be unnecessarily
duplicative to once again attach these entries to this fee request. The First Interim Fee Summary and the
Second Interim Fee Summary attached hereto respectively as Exhibit A and Exhibit B itemize the
requisite totals. Further, the narrative descriptions of the work performed and the results achieved during

During the Final Fee Period, Howard L. Adelman, Henry B. Merens and Steven B. Chaiken rendered the entirety of the services for which the allowance and payment of compensation is sought herein. Movant's services were performed in a manner designed to take advantage of the unique skills of each attorney and to derive maximum output from the time expended.

The total of the services rendered during the Final Fee Period by category, are summarized as follows:

### Final Fee Period
### (August 1, 2010 - February 16, 2011)

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| 1. Administrative Matters | 207.90 | $ 66,549.50 |
| 2. 1801 S. Meyers Road | - | $ 0.00 |
| 3. DIP Financing | 5.80 | $ 1,681.00 |
| 4. Asset Sale Efforts | 8.10 | $ 2,402.50 |
| 5. Deeds in Lieu | 64.10 | $ 21,354.50 |
| 6. Plan and Disclosure Statement | 60.70 | $ 21,109.50 |
| 7. Fee Petition | 7.40 | $ 2,585.00 |
| **TOTAL** | 354.00 | $ 115,682.00 |

---

the First Interim Period and the Second Interim Period are set forth in considerable detail in the First Interim Fee Application and the Second Interim Fee Application and are not repeated herein except insofar as may be necessary to amplify the services performed during the Final Fee Period.

91633

## A. ADMINISTRATIVE MATTERS

### Services Rendered During the Final Fee Period

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| HLA | 25.50 | $425 | $ 10,837.50 |
| HBM | 46.10 | $425 | $ 19,592.50 |
| SBC | 136.30 | $265 | $ 36,119.50 |
| TOTAL | 207.90 | | $ 66,549.50 |

Movant expended 207.9 hours during the during the Final Fee Period in this category (see

**Exhibit C** attached hereto).[8]  Movant has broken down the Administrative Category into two

principal subcategories.  The first subcategory embraces the time entries associated with the

conventional tasks of the debtor in possession (the "**DIP Services**").  The second subcategory

encompasses the range of work that came into play in analyzing and responding to the Creditor

Letter and the Creditor Motions and the ultimate determination not to oppose the appointment of

the Trustee (the "**Creditor Matters**").

1.    **DIP Services**

Movant continued to assist the Debtor in successfully fulfilling his duties as a debtor in

possession under Section 1107 of the Code. These matters included the many tasks that are

typically required to be furnished by or on behalf of a debtor in Chapter 11, as well as many other

matters that arose due to the particular circumstances and/or the complexity of the Debtor's

affairs.

The services rendered by Movant in this category during the Final Fee Period include:

---

[8]  The expenses sought during the Final Fee Period total $2,053.13 and are detailed at the end of
Exhibit C.

91633                                         10

(i)     <u>Creditor Inquiries</u>. Movant continued in its efforts to respond to the inquiries of creditors and other parties in the Chapter 11 Case requesting information regarding the status of the Chapter 11 Case and various issues arising thereunder.

(ii)    <u>Amending Schedules and SOFA</u>. Periodically during the course of the Chapter 11 Case, Movant obtained updated information regarding potential assets of the estate and recognized that it was incumbent upon the Debtor to add such information to the Debtor's Bankruptcy Schedules (the "**Schedules**") and Statement of Financial Affairs (the "**SOFA**"). As further explained in the First and Second Interim Fee Applications, Movant worked with the Debtor to complete and file detailed Schedules, SOFA, and riders thereto, along with several amendments thereto. During the Final Fee Period, Movant assisted the Debtor in preparing and filing the following amendments and notices thereof:

       (a)    <u>August 2010</u> - The Debtor amended Schedule B of his Schedules as follows: First, the Debtor amended the Rider to Sections B-13 and B-14 to: (i) include the identity of Montalbano Realty, Inc., an inactive entity which the Debtor owns, but which the Debtor did not believe had any value; and (ii) revise the value of a different entity owned by the Debtor, MBC VI, LLC, to reflect a claim held by this entity in a pending third party entity bankruptcy case. Second, the Debtor amended this Rider, as well as the answer to section B-14, with respect to the value of MBC XX, LLC so as to take into account the secured debt on the office building previously owned by this entity and the actual value received in connection with the Court-approved sale of the building. Lastly, the Debtor amended Section B-25 to include several vehicles which were either registered to or titled in the name of the Debtor, notwithstanding the Debtor's belief that some of these vehicles actually belonged to members of his family.

       (b)    <u>October 2010</u> - The Debtor amended Section B-21 of Schedule B of his Schedules to add a potential claim/cause of action which the Debtor and his spouse held against an entity hired pre-petition to provide certain work with respect to the Debtor's Arizona residence.

       (c)    <u>Notice of Amendments</u> - To insure that the creditors of the estate and the UST were properly informed, Movant inserted on the face of the notices of filing which accompanied the Schedule B amendments the substance of the amendments themselves. The Schedule B amendments and the notices of filing were served upon the UST, the Debtor's 20 largest unsecured creditors and all counsel of record.

(iii)    <u>Creative Elegance Millworks Complaint</u> - In addition to amending the Debtor's Schedules to identify the potential cause of action against Creative Elegance

91633                    11

Millworks, Movant worked with special counsel in preparing a complaint and
commencing suit in Arizona to pursue this claim.

(iv)   Fee Applications - Movant assisted other professionals employed in the Chapter
11 Case, understandably less experienced with the proper procedures, in preparing
their fee applications and obtaining appropriate compensation for their efforts. In
addition, Movant attended hearings on the professionals' fee applications and
assisted in drafting the related court orders.

(v)   Operating Reports. Movant worked with the Debtor in the preparation and timely
filing of the debtor in possession operating reports. In addition, Movant discussed
with the Debtor the calculation of the UST's quarterly fees and followed up with
the Debtor to ensure the prompt and timely payment thereof, accompanied by the
quarterly fee statements evidencing the calculation of these payments.

(vi)   Ongoing Coordination of Efforts with UST. Movant contacted the UST prior to
the filing of almost every motion in the Chapter 11 Case, to discuss the nature and
purpose of these motions and to obtain the input of the UST. Movant has made a
conscious effort to provide the UST with ongoing updates on matters arising in
the Chapter 11 Case. Movant believes that working closely with the UST has
enabled Movant to gain valuable insights and has, on a number of occasions,
resulted in Movant tailoring the relief requested in the motions brought before the
Court to achieve a more favorable result for the estate.

(vii)   Case Maintenance. Due to the complexities and numerous issues involved in this
Chapter 11 Case, Movant maintained and updated a list of open and pending
issues. As a result, Movant was able to remain abreast of the multitude of matters
which arose during the Chapter 11 Case and to handle them in an efficient and
appropriate manner.

(viii)   Document Production Movant worked with the Debtor to assemble from the
Debtor's files and thereafter produce voluminous responsive financial information
related to the Debtor and his various entities requested by the Creditor. Movant
approached the document production from the standpoint that the Creditor was
entitled to full disclosure.

(ix)   Stay Violation. Movant reviewed an arbitration complaint which named the
Debtor as a defendant in violation of the automatic stay. Movant prepared a letter
to counsel for plaintiff concerning the stay violation, had a telephone discussion
with plaintiff's counsel regarding the Chapter 11 Case, and sent an e-mail to
counsel with requested information concerning same.

91633                                12

As reflected in the foregoing summaries, Movant performed extensive services in this

category to facilitate the fulfillment of the duties imposed upon the Debtor in this proceeding and

to otherwise satisfy the administrative functions of a debtor in possession.  Movant believes that

in light of the definitive results reflected herein, the services rendered in this category were

warranted, reasonable and benefitted the estate.

   2.   **Creditor Matters**

   The services rendered by Movant during the Final Fee Period in response to the issues

raised by the Creditor progressed in multiple stages.  Initially, Movant built on the rapport it had

established with the Creditor and its counsel by augmenting the assembly and production of

documents the Creditor had sought in its investigation of the Debtor's affairs.  The reams of

materials which Movant worked with the Debtor to collect and collate during the Final Fee

Period included, among other documents, account statements, tax returns, ledgers and

information bearing on the T by E Transfer.  Movant conferred regularly with Creditor counsel to

ascertain what additional documents the Creditor desired. The ultimate production was

accomplished by a series of transmittals.  In each instance, Movant drafted explanatory

correspondence which specified the particular items contained in the package and other pertinent

information.

   The lengths to which Movant endeavored to be cooperative also permeated the other

aspects of the Chapter 11 Case.  First and foremost, and in keeping with Movant's commitment

to explore all possible avenues for resolving any differences with the Creditor before embarking

on the contested litigation that would otherwise result, Movant suspended the confirmation

process.  Movant was intent on avoiding the inevitable sacrifice of estate resources that would

91633                                    13

accompany a contested confirmation.  Movant kept the Creditor and its counsel abreast of the

parallel developments in the Chapter 11 Case and regularly consulted with the Creditor with

respect to the administrative matters outlined herein and potential DIL Transactions.

The Creditor Letter articulated a number of concerns, consisting of: (i) the need to

examine the T by E Transfer and whether there existed a basis to avoid the subject transfer; (ii)

the nature and extent to which the Refunds constitute property of the estate and the

accompanying need to recover any Refunds previously transferred and secure any future

Refunds; (iii) the request for the conferral of derivative standing upon the Creditor if the Debtor

was unwilling to pursue the Refunds and/or the T by E Transfer; (iv) the demand that the Debtor

make conforming changes to the Disclosure Statement and certain additional substantive

modifications; and (v) the production of additional documentation pertaining to the Refunds and

the T by E Transfer.

Upon receiving the Creditor Letter, Movant promptly underwent a thorough analysis of

the issues raised therein and gave considerable thought toward how best to respond.  As

suggested by the Creditor Letter, Movant agreed it made sense to meet with the Debtor, Creditor

counsel and counsel for Susan Montalbano, to flush out appropriate next steps and to chart the

path for a consensual resolution.  Movant encouraged and participated in a number of meetings

and conference calls with counsel for the Creditor, counsel for Susan Montalbano, the Debtor

and others designed to arrive at a viable settlement proposal.  Movant facilitated the submission

and exchange of written proposals for consideration by and between the Creditor and the

Debtor's spouse.

Movant determined it would not be productive to contest the position of the Creditor as to the Refunds or the T by E Transfer. Susan Montalbano had counsel in place to serve as the advocate of the positions most favorable to her rights to the Refunds and the preservation of the transfer. Movant recognized that whatever obligation the Debtor had or did not have to pursue potential claims, the Debtor did not possess the same unfettered license to dispute such claims notwithstanding whether there were grounds to do so. Accordingly, Movant devoted its attention to examining the options for installing a third party as the arbiter and potential litigator, should some other consensual resolution not be reached. Movant reached out to the UST to attain her input as to how this could be accomplished. At the suggestion of the UST, Movant contemplated layering into the Plan a special litigation trustee who would be accorded plenary authority over the resolution of the issues raised relating to the Refunds and the T by E Transfer. This measure would insure the necessary oversight sought by the Creditor and maintain the synergies Movant and the Debtor believed were in place under the Plan. Movant also examined the propriety of appointing an examiner. Movant ultimately concluded the litigation trustee was the better of the two alternatives.

Movant concurred with counsel for the Creditor that it was essential that the Refunds be secured pending any resolution. Movant prevailed upon counsel for Susan Montalbano that any Refunds in her possession and any future Refunds be held in escrow. While awaiting a response, Movant researched what judicial relief might be available should there be resistance to this

91633

15

request. Susan Montalbano assented however, and Movant prepared the requisite pleadings and

circulated same for consideration by counsel for Susan Montalbano and counsel for the Creditor.[9]

As for the Refunds which the Debtor's spouse had already expended, the vast majority of

these funds were loaned to the son of the Debtor to finance the acquisition of a real estate

development. Movant was insistent that Susan Montalbano obtain a mortgage on the acquired

parcels to secure not only the loan itself, but all monies which had been expended. In this way,

the status quo was expressly preserved.

With respect to the Disclosure Statement and the Plan, Movant weighed the strategic

advantages of filing modified pleadings while negotiations were ongoing. Certainly to do so

would create momentum and potentially enhance the ability of the Debtor to achieve

confirmation with or without the support of the Creditor. Movant and the Debtor decided that

taking this action was premature - they were less concerned with gaining a stronger foothold than

they were with accomplishing a global resolution. Moreover, the Debtor and Movant had not yet

come to any conclusions as to the fate of the Chapter 11 Case in the event a consensual

resolution could not be reached. In this context, Movant and the Debtor determined it would not

be prudent to devote further efforts toward revamping the Plan and Disclosure Statement.

Finally, consistent with the conduct of the Debtor and the Movant to date, there was no

opposition to the request of the Creditor for the additional documents enumerated in the Creditor

Letter. Movant and the Debtor worked with counsel for Susan Montalbano to make these

documents available.

---

[9] Counsel for the Creditor ended up filing a similar Motion which became the governing pleading
and which resulted in the entry of an order establishing the escrow into which the Refunds were
deposited.

91633                                    16

The manner in which Movant responded to the Creditor Letter and the dispatch with which it did so evidences that Movant was dedicated to acting and did in fact act in the best interests of the estate and its creditors. Movant elected to take precautions that preserved estate assets above all else.

At some point, negotiations broke down, leading the Creditor to file the Creditor Motions. The Creditor Motions were much more direct in questioning the actions of the Debtor and Movant with respect to the Refunds. Without debating the nature or the substance of the allegations appearing in the Creditor Motions, it became readily apparent that proceeding to confirmation would be intensely litigious; the time spent and resources expended responding to the claims of the Creditor would potentially overshadow the overriding benefits of the confirmed Plan. Taking this into account, along with the recognition of the need for third party oversight, Movant and the Debtor ultimately concluded that the appointment of the Trustee was favorable to the potential installation of the litigation trustee.

Movant took seriously the allegations made by the Creditor in the Creditor Letter and the Creditor Motions. Movant examined the duties and obligations of a debtor in possession, revisited the allocation of the Refunds and the T by E Transfer, and spent substantial time researching these evolving areas of the law and conferring internally, with the knowledge that Movant would not seek compensation from the estate for much of these efforts. As reflected in the instant fee request, Movant does not believe it is appropriate to tax the estate with the fees incurred in connection with contending with and responding to the elements of the Creditor Motions that dealt with purported claims directed against Movant. Accordingly, Movant has elected not to seek compensation from the estate for a substantial portion of the time incurred in

91633                                        17

this category. Movant submits that the net amount requested is extremely modest, and is intended to alleviate the need for the Court, the office of the UST or other creditors to further examine and discern which of the services rendered by Movant with respect to the Creditor Matters are compensable.[10]

## B. 1801 SOUTH MEYERS ROAD

Virtually all of the services rendered in this category occurred during the First Interim Period.[11] In short, in the face of an imminent foreclosure and related severe time constraints imposed by both the secured lender and the prospective buyer, Movant closed a major transaction in the early stages of the Chapter 11 Case resulting in proceeds to the estate in the amount of $835,000. This closing was a vital first step toward maximizing the value of the Debtor's assets and the successful administration of the Chapter 11 Case. A detailed description of this transaction is contained in the First Interim Fee Application.

## C. DIP FINANCING

### Services Rendered During the Final Fee Period

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| HBM | 0.90 | $425 | $    382.50 |
| SBC | 4.90 | $265 | $  1,298.50 |
| TOTAL | 5.80 | | $  1,681.00 |

---

[10] Movant approached the Plan category in the same manner and, in so doing, has voluntarily written off additional significant time.

[11] There are no entries in this category for the Final Fee Period; the Second Interim Period reflects a total of $1,651.00 in fees.

91633                                          18

Movant expended 5.8 hours during the Final Fee Period in this category (see **Exhibit D** attached hereto).

During the First Interim Period, Movant commenced negotiations for debtor in possession financing (the "**DIP Financing**") with MB Financial Bank, N.A. ("**MB Financial**" or the "**DIP Lender**") to complete the construction of a residence being constructed by the Debtor in Paradise Valley, Arizona (the "**Arizona Residence**").[12] Movant prepared the Motion for Entry of an Order: (I) Authorizing Secured PostPetition Financing Pursuant to Section 364 of the Code, (II) Granting Liens and Superpriority Claims, and (III) Granting Adequate Protection (the "**DIP Financing Motion**"). Movant worked closely with counsel for the DIP Lender to craft the requisite financing order (the "**DIP Financing Order**").

During the Second Interim Period, Movant engaged in lengthy discussions with the UST in advance of the hearing on the DIP Financing Order. The UST expressed concerns over certain elements of the DIP Financing. In response, Movant, with the cooperation and assistance of counsel for the DIP Lender, was successful in negotiating favorable changes to the DIP Financing Order. At the hearing, Movant responded to a series of inquiries from the Court concerning the key economic terms and particularly, the specific limitations on the recourse of the DIP Lender against the estate. The Court thereafter entered the DIP Financing Order. With

---

[12] The First Interim Fee Application contains a lengthy summary of: (i) the pertinent loan documents and outstanding loans; (ii) the complex sharing arrangement governing the net proceeds resulting from the sale of the Arizona Residence (the "**Sharing Arrangement**"); (iii) the underlying justification for the DIP Financing and the anticipated benefits; (iv) the history of the negotiations between Movant and the counsel for the DIP Lender and the favorable deal terms which Movant was able to orchestrate; and (v) the principal features of the "DIP Financing Order". The description of services contained in the First Interim Fee Application reflects the many benefits resulting from Movant's services in this category during the First Interim Period.

91633                                    19

the DIP Financing in place, the Debtor possessed the means to fund the costs necessary to

complete the construction of the Arizona Residence, and in so doing, permit the Arizona

Residence to be sold for its maximum value.[13]

The DIP Financing was scheduled to expire on November 17, 2010. During the Final Fee

Period, Movant procured an agreed upon extension of the DIP Financing terms through

September 17, 2011. This required that Movant confer with counsel for the DIP Lender and

convince them of the merits of the extension without altering the terms of the lending

arrangement. Movant prepared and filed a motion for the entry of an agreed order extending the

DIP Financing (the "**DIP Extension Order**"), on the same terms and conditions of the original

financing, through and including September 17, 2011 [Doc No. 181]. On November 10, 2010,

the Court entered the DIP Extension Order.

### D.  ASSET SALE EFFORTS

### Services Rendered During the Final Fee Period

| Attorney | Hours | Rate | Value | |
|----------|-------|------|-------|----|
| HBM | 1.60 | $425 | $ | 680.00 |
| SBC | 6.50 | $265 | $ | 1,722.50 |
| TOTAL | 8.1 | | $ | 2,402.50 |

Movant expended 8.1 hours during the Final Fee Period in this category (see **Exhibit E**

attached hereto).

---

[13] Movant was resolute in its negotiations with counsel for MB Financial that the DIP Financing
could not result in any possible recourse to the estate. This included the unwillingness to accord to MB
Financial a priority claim in the event of non-payment. In this way, Movant ensured that the estate would
suffer no harm if the desired result of the DIP Financing did not materialize.

At the onset of the Chapter 11 Case, the Debtor was optimistic that the Arizona Residence, once completed, could generate significant equity for the estate. Movant and the Debtor were keenly interested in initiating the marketing process early in the Chapter 11 Case in recognition of the need to install as lengthy a marketing period as possible. The Debtor advised Movant that he had selected Russ Lyon Sotheby's International Realty (the "**Broker**") as the broker to market and sell the Arizona Residence. Movant thereafter conferred with the Broker to outline the marketing program for the sale, to discuss the anticipated time frame, and to gauge the range of potential offers the Broker hoped would be forthcoming. In addition, Movant had multiple conversations with the Debtor and the Broker in which Movant negotiated the terms of a listing agreement for the Broker to market and sell the Arizona Residence (the "**Listing Agreement**").

Movant drafted the accompanying court pleadings, including the Motion for Entry of an Order Authorizing Debtor to Enter into Exclusive Listing Agreement and Application for Employment of Broker (the "**Listing Motion**"). Movant also prepared the requisite affidavit pursuant to Bankruptcy Rule 2014, which along with the Listing Agreement was appended to the Listing Motion. Finally, Movant drafted the proposed Order Authorizing Debtor to Enter into Exclusive Listing Agreement and to Employ Broker (the "**Listing Approval Order**").

During the Second Interim Period, Movant finalized the Listing Approval Order. Movant attended the hearing on the Listing Motion which took place on November 4, 2009. No objections were received to the relief requested. The Court thereafter entered the Listing Approval Order on November 5, 2009. Movant periodically conferred with the Broker to ascertain the status of his efforts. In achieving the DIP Financing and the retention of the Broker,

91633                                              21

Movant and the Debtor had instituted a marketing process intended to enhance the prospects for generating proceeds to the estate from the sale of the Arizona Residence.

During the Final Fee Period, Movant prepared and filed the pleadings necessary to extend the Listing Agreement in consonance with the extension of the DIP Financing.  On September 1, 2010, Movant filed that certain Motion for Entry of an Order Authorizing Debtor to Extend the Terms of the Previously Approved Listing Agreement [Docket No. 155].  On September 14, 2010, the Court entered an order authorizing the Debtor to extend the listing agreement through and including November 30, 2010 [Docket No. 162].  Thereafter, as mentioned above, Movant sought and obtained an extension of the DIP Financing through September 17, 2011.  At the same time, consonant with this extension, on October 27, 2010, Movant file a motion seeking authority to extend the listing agreement through and including September 17, 2011 [Docket No. 182].  On November 10, 2010, the Court entered an order authorizing the Debtor to effectuate the requested extension [Docket No. 187].  Given the overriding stagnation of the real estate market during the relevant period, these extensions were necessary to keep alive the possibility that the Arizona Residence would yield value to the estate.

### E.  DEEDS-IN-LIEU

#### Services Rendered During the Final Fee Period

| Attorney | Hours | Rate | Value | |
|---|---|---|---|---|
| HBM | 27.30 | $425 | $ | 11,602.50 |
| SBC | 36.80 | $265 | $ | 9,752.00 |
| TOTAL | 64.10 | | $ | 21,354.50 |

Movant expended 64.1 hours during the Final Fee Period in this category (see **Exhibit F** attached hereto).

91633                                            22

During the First Interim Period and the Second Interim Period, Movant conceived and

built upon the conceptual framework for implementing the DIL Transactions.[14] The synergies

which accompanied the DIL Transactions were manifest. On the one hand, the DIL Transactions

permitted the Lenders to achieve their objectives of resolving the subject borrowings and

controlling the means by which the various projects were disposed of, in accordance with

regulatory guidelines and/or internal policies. On the other hand, not only was the estate relieved

of substantial claims, but the other creditors directly benefitted from being able to enjoy a greater

share of the eventual distribution.

During the Second Interim Period, Movant spent significant time outlining and thereafter

articulating the procedures to be used to effectuate future DIL Transactions (the "**DIL**

**Procedures**"). The DIL Procedures were carefully honed to provide a sufficient description of

the proposed transaction and to protect and preserve the rights of creditors and other parties in

interest. The DIL Procedures also established a series of steps which mandated that interested

parties receive notice of the proposed DIL Transaction and be given ample opportunity to object

if dissatisfied with the terms of the transaction (the "**DIL Notice**"). On January 20, 2010, the

Court entered an order approving the DIL Procedures and the DIL Notice [Docket No. 76].

The initial DIL Transactions were with First Midwest Bank ("**First Midwest**"). The DIL

Transactions with First Midwest Bank (the "**First Midwest DIL Transactions**") proved to be

extremely complex and time consuming. Through Movant's efforts and/or assistance, the First

Midwest DIL Transactions were ultimately closed during the Second Interim Period. As a result,

---

[14] The DIL Transactions were founded on the premise that many of the lenders (the "**Project Lenders**") which loaned the funds (the "**Project Borrowings**") for the Montalbano Projects wished to streamline or circumvent the foreclosure process altogether.

91633                                          23

more than $8.5 million of claims in the Chapter 11 Case were extinguished. During the Second

Interim Period, Movant engaged in negotiations with multiple Project Lenders in addition to First

Midwest. This resulted in the preparation of draft agreements in connection with Amcore Bank,

Steeplechase Partners LLC ("**Steeplechase**"), MB Financial, Palos Bank and Trust Company

("**Palos Bank**"), Republic Bank and First American Bank. Movant was able to effectuate two

DIL Transactions with Palos Bank during the Second Interim Period, resulting in the release of

claims against the estate in the approximate amount of $3.9 million.

During the Final Fee Period, Movant engaged in continued negotiations regarding DIL

Transactions with counsel for First American Bank, Signature Bank, Republic Bank, MB

Financial and Steeplechase. Movant and the Debtor consummated the DIL Transaction with

First American Bank, resulting in the release of claims against the estate in the approximate

amount of $1.2 million. In addition, Movant was able to accomplish a short sale with respect to

certain property for which Signature Bank was the secured lender. Though the substantive relief

sought was consistent with the relief approved under the DIL Motion, because the short sale was

not specifically contemplated by the DIL Procedures, Movant prepared and, on December 17,

2010, filed that certain Motion for Entry of An Order Authorizing the Debtor, as Managing

member of MBC XXVII, LLC, to Effectuate Short Sale of Non-Estate Property (the "**Short Sale**

**Motion**") [Docket No. 209]. The Court entered an order on December 29, 2010 approving the

Short Sale Motion, thereby resulting in the release of additional claims against the estate in the

approximate amount of $2.9 million. In connection with these transactions, Movant drafted,

reviewed and revised the pertinent agreements, deeds and related documents and dealt with

multiple closing issues. The short sale was geared toward closing by year end. This compacted

91633                                      24

time frame required Movant to expedite the completion, execution and exchange of the pertinent

instruments of conveyance. These efforts proved fruitful and the closing occurred on December

30, 2010.

All in all, during the DIP Period, Movant assisted in DIL Transactions which have

eliminated claims against the estate in excess of $16 million. In addition, following the

Appointment Date, the Trustee was able to finalize and effectuate DIL Transactions which

Movant had commenced with Steeplechase (resulting in a claim reduction in excess of $1

million) and with Republic Bank (resulting in a claim reduction in excess of $7.8 million).[15]

Lastly, and as further detailed in section III herein below, the Trustee, with substantial

involvement of Movant and the Debtor, effectuated DIL Transactions with MB Financial as part

of a global settlement approved by the Court. This transaction resulted in, among other things, a

resolution of all claims MB Financial had against the estate with respect to financing the Arizona

Residence, as well as a reduction of MB Financial's remaining unsecured claim by the amount of

$300,000.

### F. PLAN AND DISCLOSURE STATEMENT

### Services Rendered During the Final Fee Period

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| HLA | 8.50 | $425 | $    3,612.50 |
| HBM | 22.90 | $425 | $    9,732.50 |
| SBC | 29.30 | $265 | $    7,764.50 |

---

[15] With respect to Republic Bank, Movant persisted in preparing pertinent documents and troubleshooting remaining closing issues beyond the Appointment Date. Movant was heavily invested in the process and desired to see the Republic Bank DIL Transactions through to their conclusion.

| Attorney | Hours | Rate | Value |
|----------|-------|------|-------|
| TOTAL | 60.70 | | $     21,109.50 |

Movant expended 60.7 hours during the Final Fee Period in this category (see **Exhibit G**

attached hereto).

During the First Interim Period, Movant and the Debtor discussed generally the contours

of the Plan in the context of the overall exit strategy for the Chapter 11 Case. As a preliminary

matter, in light of the relatively limited number of individual chapter 11 bankruptcies, as well as

in order to ensure that the Plan and the Disclosure Statement complied with the changes in law

made by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the

Bankruptcy Rules, and the local rules of the United States Bankruptcy Court for the Northern

District of Illinois, Movant scrutinized treatise materials, periodicals and case law prior to

drafting the Plan and the Disclosure Statement.[16]

During the Second Interim Period, Movant formulated the Plan in a manner which was

designed to articulate a viable distribution scheme. Movant set forth: (i) key definitions designed

to serve as a roadmap for the substance of the Plan; (ii) the classification and treatment of each

class of claims; (iii) the means by which the Plan would be implemented; (iv) the parameters of

the claims objection process; and (v) the additional terms and conditions that would govern the

many critical aspects pertaining to the substance of the Plan.

Although this was an individual chapter 11 case, the Debtor's affairs were unduly

sophisticated. Accordingly, Movant spent considerable time working with the Debtor and his

---

[16] On April 6, 2010, the Court entered an order setting August 1, 2010, as the date by which the
Debtor was required to file the Plan and Disclosure Statement (the "**Plan Deadline**"). On July 27, 2010,
the Court entered an order extending the Plan Deadline to August 9, 2010 and setting a status hearing for
August 11, 2010 [Docket No. 130].

91633                                          26

advisors to compile the necessary factual background for the Disclosure Statement.

Movant also prepared a series of exhibits to the Disclosure Statement (the "**DS Exhibits**"). The

DS Exhibits included: (i) a proposed ballot; (ii) a Montalbano Entity summary; (iii) a

Montalbano Project Summary; (iv) a summary of the proofs of claims; (v) a Liquidation

Analysis;[17] and (vi) a summary of wage claims. The DS Exhibits were expansive and time-

consuming, but were vial to the overall consideration of the financial profile of the Debtor.

During the first week of the Final Fee Period, Movant spent significant time working with

the Debtor and his other professionals to refine and finalize the Plan, the Disclosure Statement

and the DS Exhibits. As a result of these efforts, the Debtor filed the Plan and Disclosure

Statement on August 9, 2010. The initial status hearing was held on August 11, 2010, which was

continued to August 17, 2010.

At this initial hearing, Movant proposed that orders be entered setting: (i) deadlines for

filing an amended Disclosure Statement and objections thereto; (ii) a hearing to determine the

adequacy thereof; and (iii) a briefing schedule on and hearing date for the Initial Conversion

Motion. The Court set August 27th as the deadline to file an amended Disclosure Statement and

October 6th for a hearing on the adequacy of same [Docket Nos. 146 and 147].

Based in part of the comments and concerns raised by the Court and the UST at the initial

hearing, Movant undertook to revise both the Plan and Disclosure Statement. The principal

changes to the Disclosure Statement were as follows:

---

[17] In the Liquidation Analysis, Movant identified each of the Debtor's assets and their respective estimated value under the Plan and under a chapter 7 liquidation. Movant also identified the full range of liabilities which have or could be asserted in the Chapter 11 Case and the additional liabilities unique to chapter 7. To more fully understand the figures appearing in the Liquidation Analysis, Movant drafted an extensive set of endnotes which are tied into many of the line items in the Liquidation Analysis.

91633                                   27

- Movant revised the chart summarizing the treatment of the various classes of claims under the Plan to include in the Proposed Treatment section the Debtor's estimates of the specific amounts which would be paid.

- Movant revised the section on distributions to allow for applicable audit periods to expire and/or Section 505 determinations to be rendered with respect to the Refunds received by the estate.

- Movant extended the time under the Plan from fifteen (15) days to sixty (60) days after the effective date of the Plan for parties to file rejection claims in the Chapter 11 Case.

- Movant added a section relating to the discharge of the Debtor.

On August 26, 2010, the Debtor filed an amended Disclosure Statement [Docket No. 150]. Movant also made corresponding revisions to the Plan. On September 1, 2010, the Debtor filed an amended Plan of Reorganization [Docket No. 156].

In a further effort to resolve the matters raised by the Initial Conversion Motion in a consensual manner and to allow for further discussions, the Debtor agreed not to pursue the adequacy hearing. Movant prepared and, on September 10, 2010, filed a motion for entry of an agreed order extending the briefing schedule on the Initial Conversion Motion, extending the objection deadline for the amended Disclosure Statement for the Creditor, and continuing the hearing on the adequacy of the Disclosure Statement [Docket No. 160].

On September 15, 2010, the Court entered that certain Agreed Order Extending Briefing Schedule [Docket No. 164], which set: (i) September 28, 2010 as the deadline for the Debtor to file a response to the Initial Conversion Motion; (ii) October 12, 2010 as the deadline for the Creditor to file a reply in support of the Initial Conversion Motion; and (iii) October 20, 2010 for a status hearing on the Initial Conversion Motion, and which continued the hearing to determine the adequacy of the amended Disclosure Statement from October 6, 2010 to October 20, 2010.

91633                                    28

The Debtor remained hopeful that he would arrive at a consensual arrangement with the Creditor that would obviate the need for the Creditor to pursue the Creditor Motions and allow the Debtor to proceed towards a consensual Plan. To allow the parties an opportunity to continue to explore whether a consensual arrangement would be possible, on September 22, 2010, Movant filed a motion for entry of an agreed order striking the briefing schedule on the Initial Conversion Motion [Docket No. 167]. On September 28, 2010, the Court entered an order granting the relief requested [Docket No. 170].

On October 12, 2010, the Creditor filed an objection to the amended Disclosure Statement. In response, the Debtor and Movant again elected to hold off on the adequacy hearing. As a result, on October 20, 2010, the Court continued the hearing on the adequacy of the Disclosure Statement to December 8, 2010. The adequacy hearing was subsequently continued from time to time.

As the time entries reflect, Movant billed minimal time in this category since the filing of the amended Plan and Disclosure Statement. This is consistent with the decision to first explore the likelihood of a consensual arrangement; and the later conclusion that becoming enveloped in a contested confirmation setting would not be in the best interests of the estate.

### G. FEE PETITION

### Services Rendered During Final Fee Period

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| HBM | 3.90 | $425 | $ 1,657.50 |
| SBC | 3.50 | $265 | $ 927.50 |
| TOTAL | 7.40 | | $ 2,585.00 |

91633

Movant expended 7.4 hours during the Final Fee Period in this category (see **Exhibit H** attached hereto).

Movant began preparing the Second Interim Fee Application towards the very end of the Second Interim Period. Movant was previously awarded $2,975.00 as interim compensation in connection with preparation of the Second Interim Fee Application. Due to the complexities of the Chapter 11 Case and the substantial commitment and services rendered by Movant throughout the Second Interim Period, the efforts needed to properly reflect such services in the Second Interim Fee Application required additional time expenditures under this category not reflected therein. As a result, Movant is seeking additional compensation in the amount of $2,585.00 in connection with the preparation of the Second Interim Fee Application. The aggregate amount is approximately three per cent (3%) of the total fees awarded in the Second Interim Fee Approval Order and is well within accepted parameters.

Movant has minimized the amounts sought in this category. Movant requested, and was awarded, $583.00 in connection with the preparation of the First Interim Fee Application. Additionally, as the preparation of this Final Fee Application took place after the Appointment Date, Movant is not seeking any compensation in this category for the Final Fee Period.

The services rendered by Movant in this category during the Final Fee Period comply with the guidelines established by this Court in the cases of In re Pettibone Corp., 74 B.R. 293 (Bankr. N.D. Ill. 1987) and In re Wildman, 72 B.R. 700 (Bankr. N.D. Ill. 1987). In that regard, Movant is entitled to receive compensation for the preparation of this fee petition in accordance with In re NuCorp Energy, Inc., 764 F.2d 655 (9th Cir. 1985).

91633                                         30

## III.
## SERVICES RENDERED SUBSEQUENT TO THE APPOINTMENT DATE

Even after the Debtor consented to the appointment of the Trustee, and despite not seeking any compensation for such services, Movant continued assisting the Trustee in not only transitioning the Chapter 11 Case, but in effectuating certain transactions resulting in significant benefits to the estate. Among other things, Movant provided the following services:

A.    Initial Conferences and Subsequent Meeting - Movant engaged in a series of phone conversations with the Trustee to assist the Trustee in ascertaining the status of the Chapter 11 Case and identifying the nature and scope of the matters which required immediate attention. Movant participated in a lengthy meeting with the Trustee and the Debtor in March 2011 to discuss the direction of the Chapter 11 Case and address related questions of the Trustee. Movant further provided various requested information to the Trustee and coordinated the inspection of the Debtor's Oak Brook residence.

B.    Republic Bank DIL - During the days following the Appointment Date, Movant continued to refine the governing agreement for the Republic Bank DIL Transaction and participated in lengthy conference calls with special counsel for the Debtor and counsel for Republic Bank. Movant also prepared and sent a lengthy e-mail to the Trustee attaching current drafts of two (2) substantially completed deed in lieu agreements, appraisals and proofs of claim, and identifying certain key information to facilitate the completion of the DIL Transactions. The DIL Transactions with Republic Bank were thereafter consummated, resulting in the reduction of claims against the estate in excess of $7.8 million.

C.    MB Settlement - Beginning in August 2011, the Trustee entered into negotiations to resolve all claims between the estate and MB Financial (the "**MB Settlement**"). MB Financial

91633                                    31

was insistent that the MB Settlement include the Sharing Arrangement and the as yet unfinished

DIL Transactions.  As such, the involvement of both Movant and the Debtor became necessary.

Movant spent significant time (estimated to be well in excess of 30 hours) during the months of

September and October 2011 negotiating the settlement terms, reviewing and revising exhibits

thereto, and otherwise facilitating a resolution between the parties.  As a result of these efforts,

and the efforts of the other parties and their respective counsel, on October 12, 2011, the Court

approved the MB Settlement [Docket No. 331].  On October 19, 2011, the closing took place.

## IV.
## STANDARDS FOR REVIEW

The Court need look no further than Local Rule 5082-1 and the opinions in In re

Pettibone Corp., 74 B.R. 293 (Bankr. N.D. Ill. 1987) and In re Wildman, 72 B.R. 700 (Bankr.

N.D. Ill. 1987) for the applicable standard of review of the Final Application. The court in

Pettibone, at 74 B.R. 301 stated:

> Under Sections 330 and 331 of the Bankruptcy Code, professionals applying for
> fees must demonstrate in writing that their services were (1) actual; (2) necessary,
> and (3) reasonable. Once services have been performed, Bankruptcy Rule 2016
> requires that:
>
> > A person seeking interim or final compensation for services, or
> > reimbursement of necessary expenses, from the estate shall file with
> > the court an application setting forth a detailed statement of (1) the
> > services rendered, time expended and expenses incurred, and (2) the
> > amounts requested. (Emphasis in original.)
>
> These detailed applications establish the "actual", while an accompanying
> narrative explanation of the "how" and "why" establishes the
> "necessary".
>
> The primary objective of any fee petition is to reveal sufficient data to
> enable the Court to determine whether the services rendered were
> reasonable, actual and necessary. In re Jensen-Farley Pictures, Inc., 47
> B.R. 557 at 582 (Bankr. D.Utah, 1985).

91633                                    32

While the Court has wide discretion in reviewing a fee petition, such authority must be dispensed with great care and fairness, In re Wildman, 72 B.R. at 705, while keeping in mind that the well accepted goal is to encourage and induce capable attorneys to practice in the Bankruptcy Court. In re Pettibone, 74 B.R. at 306.

In analyzing a fee petition, the Court must determine "what the lawyer would receive if he were selling his services in the market rather than being paid by court order." Matter of Continental Illinois Securities Litigation, 962 F.2d 566, 568 (7th Cir. 1992). Moreover, as stated in In re Boston and Maine Corporation, 776 F.2d 2, 10 (1st Cir. 1985), the Court should focus on the benefits to the estate and the quality of the performance of counsel in the context of the case as a whole:

> Given these circumstances, it is important for a court to maintain "a sense of overall proportion," Gabriel v. Southworth, 712 F.2d 1505, 1507 (1st Cir. 1983), and not "become enmeshed in meticulous analysis of every detailed facet of the professional representation," Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976) ("Lindy II"). It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that B&M would not have enjoyed the success it did had its counsel managed matters differently. Fee-cutting "ideally should be tempered with a view towards the need for the services at the time they were rendered." In re Casco, 25 B.R. at 756 (Emphasis in original.)

Movant has endeavored to prepare this Final Application in accordance with the standards and guidelines outlined in Pettibone and Wildman.

Form of Application

1.   Itemized Daily Entries - Categories A through G contain detailed entries listing the subject activity; the date; the time spent; the nature of the services rendered; and the purpose

for same. Explanations are included to inform the reader of the circumstances giving rise to the

activity.

2.      Telephone Conferences - Telephone conferences are detailed with disclosure of

the topic of discussion, as well as the person called and reason therefor.  Telephone conferences

are cost beneficial to the estate as they provide the most efficient way to handle the numerous

matters involved.

3.      Meetings and Office Conferences - Movant spent considerable time in meetings

and conferences as a means of performing the services required. Where a meeting is described,

the persons present and topics discussed are set forth.

4.      Drafting - The drafting of documents, letters, motions and orders is clearly

delineated. The complexity of the matters and the numerous parties involved often dictated many

revisions.

5.      Legal Research - While the members of Movant have devoted substantially all

their professional careers to the practice of commercial law, bankruptcy, insolvency and

corporate reorganizations, legal research was essential on numerous occasions in a case of this

magnitude. A lawyer who does not spend considerable time in the law library is doing a

disservice to his client, and will soon find out that the rapidly evolving field of bankruptcy law is

leaving him or her behind. Indeed, the Seventh Circuit has recognized the need and requirement

for constant research and preparation by attorneys, even in their own specialized areas of

concentration. See Continental Securities, 962 F.2d at 570 (when addressing the fee request of

securities lawyers in a class action securities lawsuit, the Court stated that "no one carries the

whole of federal securities law -- not only the many detailed statutes and regulations but the

91633                                          34

thousands of decided cases -- around in his head, and a lawyer who tries to respond to a motion or brief without conducting fresh research is courting sanctions or a malpractice suit.")

6.    <u>Minimum Time</u> - Movant does not apply a uniform amount of time to a particular activity. The time entries herein have been kept on a tenth of an hour basis. The Court should be sensitive, however, to the reality that bankruptcy cases do not lend themselves to meticulous time keeping. Oftentimes, a lawyer's need to concentrate, the press of time and the emotion and energy involved, interfere with time keeping with exacting detail. Great care has been utilized to keep reasonably accurate time. Movant asks this Court to bear in mind the "big picture" context hereinbefore described by the First Circuit Court of Appeals in the <u>Boston and Maine</u> case.

7.    <u>Lumping</u> - Movant has endeavored to avoid grouping a number of unrelated activities into the same time entry. The Court should, however, keep in mind that in a case of the complexity of this case, meetings or telephone conferences will involve the discussion of numerous topics and several telephone calls may be made to a number of parties in rapid succession on one or more topic areas. The entries elaborately describe each activity with identification of the party, the purpose of the activity and in many cases, the necessity thereof. Such grouping is unavoidable, but the informative explanations herein serve to further describe and delineate the time spent.

**V.**

**BILLING JUDGMENT AND AVOIDANCE
OF DUPLICATION OF SERVICES**

As set forth in <u>In re Pettibone</u>, 74 B.R. at 303, Section 330 of the Code provides that compensation for actual and necessary services makes the exercise of billing judgment

91633                                        35

"mandatory" in bankruptcy fee petitions. The estate should not bear the burden of duplication of efforts which should be avoided by the exercise of good billing judgment.

Movant is a small firm, which by definition prevents any significant duplication of efforts. Herein, Howard L. Adelman, Henry B. Merens and Steven B. Chaiken have performed the vast majority of services outlined herein in connection with the Movant's representation of the Debtor. Every effort has been made to delineate specific tasks and in so doing, to prevent an unnecessary overlap in representation. While certain matters required joint consultations, duplication has been judiciously avoided. When more than one attorney was needed, this was as a result of the great complexity of a given matter, the press of business, or if another member of the firm was handling a matter in some way connected with another activity. So, too, as with other matters, certain interoffice conferences between partners of the firm or a partner and an associate occurred as were necessary and beneficial for the estate. The benefit to the estate from these activities resulted in an associate being able to perform certain services which brought with it the lowered rates of the associate and also the associate's greater availability to perform such services. It is not realistic to expect associates with limited experience in a case to operate as efficiently as a partner with greater experience not only in a given case but in the practice of law. Accordingly, some joint participation in a case of this magnitude and activity is unavoidable. In fact, however, such overlap ultimately resulted in a more efficient and economic expenditure of time.

Movant believes that it has instituted an efficient mechanism for maximizing the particular skills and resources of its personnel in this case. As reflected in the time entries appended hereto, Mr. Adelman provided oversight, and participated in a number of meaningful

91633                                      36

discussions with the Debtor and others to chart the course of this proceeding and to identify

substantive concerns.  Messrs. Merens and Chaiken worked in tandem, but with a minimum of

duplication to implement the desired strategy reached in these sessions, and to otherwise carry

out the objectives of the Debtor.

Practically speaking, a small firm such as Movant's does not have the luxury of having

more than one attorney generally handle any particular task. So, too, in a case with issues as

complex as those presented to Movant here, at times certain problems required the collective

judgment of the attorneys in the firm. Moreover, Movant has voluntarily eliminated and is not

seeking compensation for a significant number of time entries which arguably constitute

unnecessary duplication of work. As a result, a review of the detailed statement of services

rendered by Movant in this case reflects that duplication of services, albeit at times necessary,

was kept to an absolute minimum and in fact generated cost benefits to the estate. The

appropriateness of the billing judgment of Movant can best be supported by the following

analysis of the factors set forth in In re Pettibone:

A.    Individual Responsibility - A review of this Final Application will show that when

interoffice conferences were required, they were required primarily to facilitate the coordination

of effort and avoid the duplication thereof.  The Court will find few lengthy interoffice

conferences given the complexity and time sensitivity of the issues which have been addressed in

this Chapter 11 case. Movant has prepared this Application to comply with the billing guidelines

for office conferences as set forth in In re Adventist Living Centers, Inc., 137 B.R. 692, 697

(Bankr. N.D. Ill. 1991). In conformity with Adventist Living Centers, Movant has billed only

"active" attorney's time for office conferences.  However, if the office conference constituted (i)

a "status" conference wherein one attorney advises another as to matters pending in a case and often assigns future work to be performed or (ii) a "strategy" conference wherein one or more attorneys determine the course of action to be taken, then Movant has billed for all attorneys involved in the conference.

B.    <u>Court Appearances and Meetings</u> - There are few instances where more than one attorney attended a particular court appearance. Meetings for particular matters have with rare exceptions been attended by only one attorney. On certain occasions, it was necessary for more than one attorney to attend a meeting or court hearing. The use of more than one attorney was precipitated by the fact that such meetings or hearings usually led to the delegation of several different activities, or involved discussions concerning information that could best be gained firsthand.  Additionally, only on rare occasion and where necessary did more than one attorney attend a court hearing.

C.    <u>Appropriate Level of Skill</u> - Herein, Messrs. Adelman and Merens have had a significant role in the representation of the Debtor in those areas requiring the services of more experienced practitioners. Where appropriate, however, the legal work was handled by other members of the firm to take advantage of lower billing rates.

D.    <u>Legal Research</u> - Most of the legal research was performed by members of the firm with lower hourly rates to further reduce the amount of fees in this case.

E.    <u>Document Review</u> - A careful review of the detailed time entries will reflect that there are very few entries for one attorney reviewing the work product of another attorney. In the rare cases where such examination appears, it was necessary as a result of the press of time and complexity of the matter involved. It is both necessary and expected that such complex legal

91633                                      38

work will involve a certain amount of analysis by more than one attorney. The Court should be

advised, however, that these instances are few, and at no time was such a review simply a matter

of interest. Again, pursuant to the requirements of <u>Adventist Living Centers</u>, only the active

attorney's time is billed in this Application for a document review conference.

## VI.
## QUALIFICATIONS OF MOVANT; PRECLUSION OF EMPLOYMENT DUE TO ACCEPTANCE OF THIS CASE; AND COST OF COMPARABLE SERVICES

Adelman & Gettleman, Ltd. was established in 1983 and has been listed in The

Martindale-Hubbell Bar Register of Preeminent Lawyers since approximately 1985. The firm is

pleased to have a number of its lawyers listed in Naifeh and Smith's "The Best Lawyers in

America", Woodward/White; "America's Leading Lawyers for Business" by Chambers and

Partners; Illinois Super Lawyers, and Illinois Leading Lawyers Network.

Movant has brought to bear on the problems of the Debtor the collective skill and

experience of the following members of Adelman & Gettleman, Ltd.:

<u>HOWARD L. ADELMAN</u>

Mr. Adelman is a 1977 cum laude graduate of St. Louis University School of Law, and is

licensed to practice in the States of Illinois and Missouri. Upon his graduation from law school,

Mr. Adelman was law clerk to the Honorable Robert G. Dowd, Chief Judge of the Missouri

Court of Appeals, St. Louis District, and later became the Executive Judicial Assistant to the

Missouri Court of Appeals, St. Louis District.

In 1978, Mr. Adelman joined the firm of Schwartz, Cooper, Kolb & Gaynor, and was

made a partner in said firm in 1981. In 1983, Mr. Adelman formed the law firm of Adelman &

91633                                       39

Gettleman, Ltd. with Chad H. Gettleman.  Since entering private practice in 1978, Mr. Adelman

has devoted his entire professional practice to areas of commercial litigation, bankruptcy,

insolvency, and corporate reorganization. Mr. Adelman has participated in major bankruptcy

cases since 1978 as counsel to the Debtor as well as serving as counsel to the Creditors

Committee, has confirmed numerous plans of reorganization, and has tried and argued cases in

the Bankruptcy Court and the United States District Court.

Mr. Adelman has appeared in the Seventh Circuit Court of Appeals on numerous

occasions beginning with In re EDC Holding Company, 676 F.2d 945 (7th Cir. 1982). Mr.

Adelman has been listed in the 1995 - 1996, 1997 - 1998, and 1999 - 2000 editions of Naifeh and

Smith's "The Best Lawyers in America", Woodward/White (1999). In October of 1999, Mr.

Adelman was appointed by Chief Justice William Rehnquist to serve as a member of the Judicial

Conference Advisory Committee on the Federal Rules of Bankruptcy Procedure. Mr. Adelman

was inducted as a Fellow of the American College of Bankruptcy, as part of its Twelfth Class.

HENRY B. MERENS

Henry B. Merens is a partner of the Chicago law firm of Adelman & Gettleman, Ltd.

Since his admission to practice in 1981, Mr. Merens has concentrated in the areas of bankruptcy,

real estate, civil litigation and commercial transactions, and has had extensive experience in

virtually all aspects of insolvency practice. Mr. Merens has participated in numerous significant

Chapter 11 cases, as counsel to debtors, creditors, creditors' committees, secured lenders, trustees

and other parties. As debtor's counsel, Mr. Merens has confirmed a number of Chapter 11 plans

of reorganization and has successfully concluded multiple Chapter 11 liquidations involving

going concerns sales of various business enterprises. Mr. Merens has had several articles

91633                                            40

published in the fields of bankruptcy and commercial practice, and has participated as a featured speaker at a seminar dealing with mortgage foreclosures in Illinois, speaking on the interplay of bankruptcy and the foreclosure process. In April 2009, Mr. Merens participated in a panel discussion sponsored by the National Business Institute entitled "Bankruptcy Forum: What Judges And Trustees Want You To Know." Mr. Merens covered the segment of the discussion concerning Real Estate Issues in Bankruptcy. Mr. Merens has again been selected by his peers as an Illinois Super Lawyer for 2011. Mr. Merens earned his B.A. degree at Trinity College and his J.D. degree at the Washington University School of Law.

BRAD A. BERISH

Mr. Berish is a 1984 graduate of Indiana University. Following his graduation, Mr. Berish became a Certified Public Accountant and worked for a real estate development and management firm. Mr. Berish has been at the firm throughout his legal career since he graduated from Emory University School of Law in 1989 and has been a partner for over nine years. Mr. Berish has represented debtors, secured lenders, creditors, trustees, purchasers, and assignees for the benefit of creditors in workouts and reorganizations throughout the United States.  He has represented clients in diverse industries including banking, construction, food processing, insurance, legal, manufacturing, real estate, telecommunications, and trucking.  Recent bankruptcy case involvement includes Armstrong World Holdings, Inc., Consolidated Freightways Corp., Enron Corp., Federal Mogul Corp., Kaiser Aluminum Corp.,  Kmart Corp., and USG Corp.  In addition to bankruptcy related litigation, he has extensive expertise in general commercial and real estate related litigation.  In 2005, 2006, and 2007, Mr. Berish was elected by his peers as an Illinois Super Lawyer in the area of bankruptcy and reorganization.

91633                                                    41

STEVEN B. CHAIKEN

Mr. Chaiken joined the firm in January 2007 and focuses his areas of practice in business

bankruptcy, reorganization and commercial litigation. Mr. Chaiken is a 1997 graduate of the

University of Illinois, and graduated from the University of Illinois College of Law in 2000 *cum*

*laude*. Prior to joining the firm, Mr. Chaiken served as the general counsel for a

telecommunications company in South Florida with annual revenues exceeding $150 million.

Mr. Chaiken successfully assisted the company through a lengthy Chapter 11 which resulted in a

confirmed plan of reorganization. Mr. Chaiken was selected by his peers as an Illinois Rising

Star for 2010 and 2011.

## VII.
## RECAPITULATION OF SERVICES RENDERED DURING FINAL FEE PERIOD

The following is a summary of the legal services rendered by each member of Movant

during the Final Fee Period:

### Services Rendered During the Final Fee Period

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| HLA | 34.00 | $425 | $    14,450.00 |
| HBM | 102.70 | $425 | $    43,647.50 |
| SBC | 217.30 | $265 | $    57,584.50 |
| TOTAL | 354.00 | | $  115,682.00 |
| | | (less $10,000 voluntary discount) | $  105,682.00 |

As a result of the acceptance of employment as counsel to the Debtor in this case, Movant

was precluded from rendering services in other substantial legal matters. At various times

91633                                    42

throughout the Chapter 11 Case, Messrs. Adelman, Merens and Chaiken were required to spend a

significant portion of their time on matters involving the Debtor. The expertise of Messrs.

Adelman and Merens have been required in light of the complexity of the Chapter 11 Case. The

hourly rates charged by Movant are commensurate with the skill and expertise brought to bear on

the duties and responsibilities of the Debtor, and are substantially less than the rates of many

other bankruptcy practitioners of similar or lesser experience.

## VIII.
## MOVANT'S STATEMENT PURSUANT TO §§ 329 AND 504
## OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2016

Except with respect to the sharing of compensation authorized under Section 504(b) of

the Code, Movant has not shared or agreed to share any award of fees received in connection

with this case with any person, firm or entity. There does not exist any agreement or

understanding between Movant, associates or employees, and any other person, firm or entity

with respect to the sharing of compensation herein.

## IX.
## NOTICE

In accordance with Bankruptcy Rules 2002(a)(6) and 2002(c)(2), Movant has provided 21

days notice of the hearing of this Final Application (the "**Notice**") to the office of the U.S.

Trustee, the Internal Revenue Service, the Debtor, all creditors, all counsel of record and other

parties requesting notice in the Chapter 11 Case. Movant has also served the Final Application

on the office of the U.S. Trustee, the Internal Revenue Service and all counsel of record and, as

expressly set forth in the Notice, has made copies of the Final Application available to any party

upon request. Movant submits that such notice is adequate under the circumstances, and requests

91633                                    43

that any further notice requirement be waived and/or reduced in accordance with Rules

2002(a)(6), 2002(c)(2) and 9006(c).

## X.
### CONCLUSION AND REQUEST FOR ALLOWANCE AND PAYMENT OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

For the above and foregoing reasons, in consideration of the time and labor required and

performed in this case; the novelty and difficulty of the matters herein; the skill required to

properly and efficiently perform the legal services; the preclusion of employment of Movant in

other matters due to the complexity of this case during the DIP Period; the customary fees

involved in comparable matters; the nature of the matters requiring Movant's involvement; the

experience, reputation and ability of Movant, the level of commitment required of Movant

throughout the DIP Period, the results achieved; the substantial discounts which Movant

voluntarily applied in connection with the Second Interim Fee Application and with respect to

the services rendered during the Final Fee Period; and the continued assistance provided by

Movant to the Trustee after the Appointment Date, Movant respectfully requests approval on a

final basis of all compensation requested as counsel to the debtor in possession during the DIP

Period in the amount of $423,345.00 (and reimbursement of ordinary and necessary expenses

incurred in connection therewith in the amount of $6,105.25); that such amounts be determined

to be actual, reasonable, necessary and justified; and that the fees and costs requested be allowed.

Movant further requests that the Trustee be authorized and directed to pay Movant

forthwith the net payment requested in the amount of $107,735.13 from funds currently available

in the estate forthwith and that Movant be awarded such other and further relief as is just.  In

91633                                         44

accordance with the foregoing, Movant respectfully requests entry of an Order, a proposed form

of which is attached hereto, authorizing the relief requested herein.

Respectfully submitted,

ADELMAN & GETTLEMAN, LTD.

By:_____/s/ Howard L. Adelman_____
     HOWARD L. ADELMAN

By:_____/s/ Henry B. Merens_____
     HENRY B. MERENS

By:_____/s/ Steven B. Chaiken_____
     STEVEN B. CHAIKEN

HOWARD L. ADELMAN, ESQ. (ARDC #0015458)
HENRY B. MERENS, ESQ. (ARDC #6181695)
STEVEN B. CHAIKEN, ESQ. (ARDC #6272045)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
312-435-1050
Attorneys for the Debtor

91633

45