UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 09 B 30477 |
|  | ) |  |
| ANTHONY P. MONTALBANO, | ) | Chapter 7 |
|  | ) |  |
| Debtor. | ) | Judge Timothy A. Barnes |
|  | ) |  |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

This matter comes before the court on the Objection to Claim No. 19 [Docket No. 385] and the Objection to Claim No. 18 [Docket No. 386] (together, the "Objections") of chapter 7 trustee, Joseph A. Baldi (the "Trustee") of the bankruptcy estate of Anthony Montalbano (the "Debtor"), wherein the Trustee seeks to disallow both Claim No. 19 and No. 18 (the "Claims") filed by Michael McGurn ("McGurn") and Thomas Sapienza ("Sapienza"), respectively (together, the "Claimants"). The Objections implicate sections 502 of title 11, United States Code and Rule 3007 of the Federal Rules of Bankruptcy Procedure, as well as section 13 of the Illinois Wage Payment and Collection Act (the "Wage Act" or the "Act").[1]

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1).

---

[1] For purposes of this Memorandum decision, Sapienza's Claim and McGurn's Claim will be collectviely referred to as "the Claim" and where appropriate, both parties will be referred to as "the Claimaints." Sapienza's Sur Reply filed on Dec. 12, 2012 expressly stated that Sapienza has relied and incorporated the Sur Reply of McGurn to Trustee's Objection to Claim No. 19. Further, the Trustee has raised the same issues in each of the Objections. Thus, both parties have presented the same argument and will be decided together.

A proceeding to allow or disallow to a claim arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(B). *Lenior v. GE Capital Corp. & Penski (In re Lenior)*, 231 B.R. 662, 667 (Bankr. N.D. Ill. 1999) (Schmetterer, J.); *Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 693 (Bankr. N.D. Ill. 1999) (Schmetterer, J.). An objection to a claim under section 502 of the Bankruptcy Code arises in a case under title 11 and is also specified as a core proceeding. 28 U.S.C. § 157(b)(2)(B); *Lenior*, 231 B.R. at 667; *Knox*, 237 B.R. at 693.

## PROCEDURAL HISTORY

In considering the Objections, the court has considered the arguments of the parties at the October 30, 2012 and January 8, 2013 hearings (the "Hearings"), and has reviewed and considered the Objections, any exhibits submitted in conjunction therewith, as well as:

(1) The Trustee's Notice of Hearing and Objection to Claim No. 19 [Docket No. 385] and Trustee's Notice of Hearing and Objection to Claim No. 18 [Docket No. 386]; and

(2) The McGurn's Response to Trustee's Objection to Claim No. 19 [Docket No. 405] and Sapienza's Response to Trustee's Objection to Claim No. 18 [Docket No. 440].

Though the foregoing items together do not constitute an exhaustive list of the filings in the above-captioned case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146 at *2 (N.D. Ill. March 8, 1993); *In re Fin. Partners*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

## FACTUAL HISTORY

From the foregoing review and consideration, and for the purposes of determining whether a Trustee's Objection to a Claim is warranted only, the court assumes the following facts to be true:[1]

(1) The Debtor was the 100% shareholder, sole director, Chief Executive Officer and President of Montalbano Builders, Inc. ("MBI") from October 1, 2000 through May 13, 2009. In that capacity, the Debtor was the signatory to all MBI bank accounts. The Debtor handled the daily affairs of MBI and was responsible for ensuring that its employees were paid.

(2) McGurn was employed as the General Counsel of MBI from March 18, 1998 through May 12, 2009.

---

[1] Given that the parties do not dispute the facts central to this inquiry but rather concentrate solely on the application of the appropriate legal standard under the Wage Act, the court is not required to make independent findings of fact. A recitation of the assumed facts is nonetheless helpful in determining the legal dispute at bar.

2

(3) Sapienza was employed as the Commercial Property Manager of MBI from October 1, 2000 through May 13, 2009.

(4) Though in its early years, MBI was apparently self sufficient, beginning in June 2007, the Debtor funded a portion of MBI's operations through a series of loans/capital advances.

(5) On April 22, 2009, the Debtor ceased funding MBI's shortfalls. By that time, the Debtor had advanced in excess of $36 million to MBI.

(6) Though Claimants were paid wages through April 26, 2009, on May 12, 2009, Paul Cultine, CFO of MBI, sent an email to employees of MBI indicating that the next scheduled payroll of May 14, 2009 would not be met and was rescheduled to May 21, 2009.

(7) On May 13, 2009, the remaining employees of MBI, including the Claimants, were called into a meeting and informed that due to the real estate meltdown the company could not continue, and that employment of all employees was terminated effective immediately.

(8) On May 20, 2009, the CFO of MBI sent an e-mail, on behalf of the Debtor, to all employees indicating that the rescheduled payroll of May 21, 2009 would not be met and that the company definitively intended to pay the payroll in the near future including accrued paid time off.

(9) The Debtor commenced the above-captioned case (the "Case") on August 19, 2009 by filing a voluntary petition under chapter 11 of the Bankruptcy Code. On February 9, 2011 this court entered an order directing the United States Trustee to appoint a trustee in the chapter 11 case. The Trustee's appointment as trustee of the bankruptcy estate of Debtor was approved on February 16, 2011

(10) On October 7, 2009, Sapienza filed a Wage Claim Application with the Illinois Department of Labor and filed Claim No. 18 in this Case as a priority wage claim seeking $2,332.33 for unpaid wages and paid time off.

(11) On October 13, 2009 McGurn filed a Wage Claim Application with the Illinois Department of Labor and filed Claim No. 19 in this Case as a priority wage claim seeking $10,615.38 for unpaid wages and paid time off.

(12) On January 8, 2010, the Illinois Department of Labor Administrative Law Judge issued a Wage Payment Demand in favor of Sapienza and against MBI in the amount of $2,332.33 and noted that:

> This decision is against the name respondent solely. The undersigned takes official notice that Anthony P. Montalbano, Sr. has filed individual bankruptcy in U.S. Bankruptcy Court for the Northern District (Chicago) of Illinois, Case No. 1:09-BK-30477. It is a responsibility

3

        claimant to ensure that a claim is filed in the bankruptcy court. Claimant is advised to contact the bankruptcy trustee regarding the proceedings.

(13)    On January 22, 2010, the Illinois Department of Labor Administrative Law Judge issued a Wage Payment Demand in favor of McGurn and against MBI in the amount of $10,615.38, otherwise making the same notation as was done with respect to Sapienza.

(14)    On March 8, 2011, MBI filed a voluntary petition under chapter 7 of the Bankruptcy Code and an interim trustee was appointed to administer the case. After several changes in trustee, a permanent trustee was appointed and continues to serve in that case. This court presides over the MBI case as well as this case.

(15)    On November 1, 2011, the Case was converted from a case under chapter 11 of the Bankruptcy Code to a case under chapter 7 of the Bankruptcy Code and the United States Trustee appointed the Trustee to continue to administer the Debtor's bankruptcy estate as the chapter 7 trustee.

(16)    On December 1, 2011, McGurn sent an e-mail to Trustee to address the Trustee's concern that while employees of MBI were owed last wages, the Debtor was not the employer of those employees. Attached to the e-mail was a Memorandum from McGurn to Trustee addressing the liability of MBI and Debtor. The Memorandum addressed and asserted that that Debtor was liable for employee wage claims under section 13 of the Wage Act.

(17)    On January 20, 2012, McGurn filed Amended Claim No. 19 in this case, reflecting the Administrative Law Judge's ruling with respect to MBI and thereby seeking $10,615.38 as a priority wage claim.

(18)    Thereafter, the parties proceeded to brief the matter before the court. After conducting the Hearings, the court took the matter under advisement so that the court could further consider the legal arguments made. On February 6, 2013, the court orally announced its ruling in this matter, stating that this Memorandum Decision would follow.

## DISCUSSION

    Claimants' arguments are founded in the Wage Act, and how the Act may expand MBI's liability to its employees (as already determined by the Administrative Law Judge) from MBI alone to MBI and the Debtor. Given the determinations by the Administrative Law Judge, this court does not reconsider whether and to what extent the Claimants are owed in wages by MBI. As to MBI, that is a matter of established law and this court has no jurisdiction to reconsider the state judge's determination. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). The court notes, however, that MBI is a legal entity different and distinct from the Debtor, and as such, neither MBI's bankruptcy proceedings nor the

determinations of the Administrative Law Judge necessarily bind either the Debtor or the Trustee.[2] Nonetheless, for the purposes of this Memorandum Decision and because the Trustee has not challenged the underlying liability of MBI as it pertains to the Debtor (except in the limited respect of the Wage Act's extension to the Debtor), the court presumes that the determinations of the Administrative Law Judge are in fact binding.

The court is not, however, so constrained with respect to the Debtor's direct liability under the Wage Act. The Administrative Law Judge expressly reserved this issue for determination by the bankruptcy court. In addition, there appears to be no published law in Illinois or the federal courts regarding how the Wage Act should be applied in circumstances such as those at bar. As such, it falls upon this court to determine whether the Debtor would, outside of bankruptcy, be liable to MBI's employees for the wages in question. Such a determination begins with the Wage Act itself.

The Wage Act provides employees a cause of action to collect payment of earned wages or final compensation due to them. *See generally* 820 ILCS 115/4-115/6. The Act "applies to all employers and employees in this State . . . ." 820 ILCS 115/1.

The Wage Act requires employers to pay "final compensation" to former employees. 820 ILCS 115/5. The term "final compensation" is defined as compensation "owed by the employer pursuant to an employment contract or agreement between 2 parties," 820 ILCS 115/2, and includes the grant of restricted stock. *See Kim v. Citigroup, Inc.*, 368 Ill. App. 3d 298, 305 Ill. Dec. 834, 856 N.E.2d 639, 646 (Ill. App. 2006). The Wage Act "does not confer any rights to recovery of final compensation in the absence of a contractual right." *Byker v. Sequent Computer Sys., Inc.*, No. 96C2297, 1997 WL 639045, at *7 (N.D. Ill. Oct. 1, 1997).

Furthermore, the Wage Act has been amended to define wages broadly. *Metropolitan Distributors, Inc. v. Illinois Dept. of Labor*, 114 Ill. App.3d 1090, 449 N.E.2d 1000 (1st Dist. 1983) (explaining the original Act was found by "the Illinois Supreme Court to exclude vacation pay from the ambit of the statute. The Act was amended, not only to expressly include vacation pay, but to define wages even more broadly to include any compensation due and owing an employee by an employer pursuant to an employment contract."). Moreover, "[t]he legislative intent of the Act was to include a broad class of compensation due employees." *Shields v. Associated Volume Buyers, Inc.*, No. 93C7620, 1994 WL 110397 at *1 (N.D. Ill. Mar. 31, 1994). These Seventh Circuit holdings confirm that the purpose of the Wage Act is to "protect employees in Illinois from being stiffed by their employers." *Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir.1998).

This, of course, fails to address the more salient question of who or what constitutes an employer under the Act.

In section 2, the Wage Act states that "the term 'employer' shall include any individual, partnership, association, corporation, business trust . . . or any person or group of persons acting

---

[2]     *See United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995) (stating that "the doctrine may not bar a party against whom there is no state court judgment"). The *Owens* court, however, was not making a statement about the necessity of a final judgment - it was merely making the point that the *Rooker-Feldman* doctrine could not apply to parties that were not present in the state-court litigation. *See id.* ("Because the Postal Service was not a party in state court action in this case, the *Rooker-Feldman* doctrine does not apply.").

5

directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." 820 ILCS 115/2. According to the Illinois Supreme Court, however, it is section 13, "and *not* section 2, that defines who, other than the employer itself, may be treated as an 'employer' for purposes of the Wage Act." *Andrews v. Kowa Printing Corp.*, 217 Ill.2d 101, 298 Ill. Dec. 1, 838 N.E.2d 894, 899 (Ill. 2005). Thus,

> when considered together, section 2 and section 13 form a coherent and entirely sensible policy. Section 2 confirms that an employer is liable both for its own violations of the Wage Act and for any Wage Act violations committed by its agents. Section 13, in turn, imposes personal liability on any officers or agents who knowingly permitted the Wage Act violation. Unlike a literal reading of section 2, which imposes strict Wage Act liability upon all supervisory employees, this reading reserves personal Wage Act liability for those individual decision makers who knowingly permitted the Wage Act violation.

*Id.* at 899-900.

Because McGurn and Sapienza were employed by MBI and expected to and in fact did report to work and perform their respective duties until May 12, 2009, the Illinois Department of Labor Administrative Law Judge issued a Wage Payment Demand in favor of McGurn and against MBI in the amount of $10,615.38 and a separate Wage Payment Demand in favor of Sapienza and against MBI in the amount of $2,332.33. In bankruptcy, pursuant to section 507(a)(4) of the Bankruptcy Code, the Claimants' claim for wages of 10,615.38 and $3,332.33 appear to be entitled to fourth-level priority because the wages were within the 180 days immediately prior the bankruptcy petition's filing on August 19, 2009.[3]

However, as noted above, McGurn's Amended Claim No. 19 and Sapienza's Claim No. 18 state a Wage Act claim against the Debtor individually. As was discussed above, for this the court must look to section 13, not section 2, of the Act. *Kowa Printing Corp.*, 838 N.E.2d at 899-900.

The Wage Act provides that "[a]ny officers of a corporation or agents of an employer who *knowingly permit* such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13 (emphasis added). To incur individual liability under the Wage Act, an officer must "(i) have knowledge of the compensation arrangement . . . and (ii) knowingly permit the corporation to wrongfully deny some amount of compensation by participating in the decision to do so." Richard L. Miller, II, & John Haarlow, Jr., *Departing Executives and the Wage Payment Act*, 96 Ill. B.J. 138, 142 (2008) (surveying Illinois case law); *see Spaulding v. Abbott Labs.*, No. 10C199, 2010 WL 4822894 (N.D. Ill. 2010).

Based on the evidence before it, the court has no difficulty concluding that the Debtor, as the 100% shareholder, sole director, CEO and President of MBI, knew of Claimants' compensation arrangements. Thus, the first part of this two-part analysis is unquestionably met.

---

[3] The undersigned is not presiding over the bankruptcy case of MBI. Any observations with respect to how matters may or may not be handled therein are illustrative only, and do not in any way, shape or form act to bind the judge in that case.

The second part is not so easy. The Claimants contend that because the Debtor knew (or should have known) that the withdrawal of his funding of MBI would result in MBI being unable to meet its employment obligations, the Debtor did in fact knowingly permit the corporation to wrongfully deny the Claimants their compensation. This argument, however, stretches the application of the Wage Act beyond any scope reasonably intended by the Illinois legislature.

In *Andrews v. Kowa Printing Corp.*, the Illinois Supreme Court considered whether the 100% owner, sole officer and sole director of an Illinois corporation could be held liable under the Wage Act for alleged violations arising from his failure to cease the corporation's activities despite its "impending demise," allowing employees to work when in a lender forbearance period, and surrendering assets to that lender in lieu of seizure. *Kowa Printing Corp.*, 838 N.E.2d at 901. The Illinois Supreme Court affirmed the appellate court's rationale for rejecting individual liability wage claims against the corporate official. *Id.* at 901-02. As the appellate court succinctly stated, while the officer "most likely knew the situation was inevitable, . . . he did not opt to pay others in lieu of paying plaintiffs." *Andrews v. Kowa Printing Corp.*, 351 Ill. App. 3d 668, 671, 678, 814 N.E.2d 198, 201, 207 (2004) *aff'd Kowa Printing Corp.*, 838 N.E.2d at 901. The Illinois Supreme Court further noted that nothing supports the inference that the owner/officer set out to deprive the employees of benefits or pay. *Kowa Printing Corp.*, 838 N.E.2d at 902. It is clear from *Kowa Printing* that the Court viewed section 13 of the Wage Act as triggered by some intentional misdirection or withholding of funds otherwise available to pay wages. *Id.*

As in *Kowa Printing*, Claimants' arguments here rest on the fact that, because of Debtor's position at MBI, the Debtor had sufficient knowledge of the financial condition of MBI and therefore "knowingly" permitted MBI to withhold wages owed to the Claimants. Claimants argue that the Debtor had superior knowledge that his business was not viable without his continued advances and therefore he had an obligation to prevent his employees from reporting to work when he ceased making these advances. As support for this argument, the Claimants rely on the fact that the Debtor made in excess of $36 million of loans and capital advances to MBI to fund operations.

This court agrees with the Illinois Supreme Court that such arguments will not support a section 13 Wage Act claim.

While it could be reasonably established from the existence of the loans that the Debtor had knowledge that MBI was within the "vicinity of bankruptcy," the nexus between this recognition of financial distress and individual liability is far too attenuated. *Credit Lyonnais Bank Nederland, N.V. v. Pathe Commc'ns Corp.*, No. Civ. A. 12150, 1991 WL 277613 (Del. Ch. Dec. 30, 1991). Upon recognizing MBI's financial difficulties, the Debtor voluntarily used his own money to support the business operations of MBI as an alternative to bankruptcy. MBI did not secure outside financing to keep MBI alive. Rather, the Debtor voluntarily chose to make personal loans and capital advances to MBI. While the Debtor's actions evidence a knowledge of MBI's financial situation, the distinction between the Debtor's good faith and a suggested "scienter" requirement is important in determining individual liability under the Wage Act. Illinois courts have reasoned that "if the legislature intended for corporate officers or agents to be personally liable in *all* situations where that officer or agent exercises operational control," it would have so stated. 814 N.E.2d at 208, 286 Ill.Dec. at 558 (emphasis in original). The court finds that the Debtor's actions and knowledge, rather than subjecting it to liability, illustrate the Debtor's faith in MBI and his good faith efforts to keep MBI from having to declare bankruptcy.

7

Nor can this court find as a result any "injury or inequity in this infusion of working capital." *In re Lifschultz Fast Freight*, 132 F.3d 339, 347 (7th Cir. 1997). The Debtor has personally contributed "fresh working capital" to keep MBI alive as a going concern and was under "no obligation to do so." *Id.* Therefore, as in *Lifshultz*, "[a]ssuming there was no deception, we see no reason to treat an insider's loan to a company more poorly than that of a third party's." *Id.* Absent deception, what the Claimants seek is to hold the Debtor to a culpability higher than the court would hold a third party who had loaned or provided capital advances to MBI.

In this regard, Claimants' allegations are not that different from those regarding "deepening insolvency,"[4] a cause célèbre in recent years in the insolvency community. There has been a significant debate among courts as to whether deepening insolvency is its own independent cause of action, simply a theory of damages, or neither. *See Fehribach v. Ernst & Young LLP*, 493 F.3d 905, 908-09 (7th Cir. 2007) (calling deepening insolvency a "controversial theory"); *In re Amcast Indus. Corp. et al.*, 365 B.R. 91, 119 n.19 (Bankr. S.D. Ohio 2007) ("While declining to recognize deepening insolvency as a valid cause of action, the court believes that the concept may be useful as a measure of damages for breach of fiduciary duty or commission of an actionable tort.").

In advancing a theory of deepening insolvency, a party makes the claim that a controlling party should be held liable for debts incurred by a business as the business falters, because that controlling party could have acted to avoid those debts by terminating the business at the first sign of potential insolvency. *In re Flagship Healthcare*, 269 B.R. 721, 728 n.4 (S.D. Fla. 2001). So the theory goes, the failure to so act gives rise to liability on the part of the controlling party. *Id.* While this theory was bolstered by several early rulings on matters which alleged it,[5] ultimately, the courts that considered it in depth found that no principled reason exists to treat such claims differently than traditional veil-piercing or fraud claims. *See, e.g., In re Gluth Bros. Const., Inc.*, 424 B.R. 379, 389-90 (Bankr. N.D. Ill. 2009) (Barbosa, J.) (If "Illinois were to recognize the theory of deepening insolvency, it would only do so in the context of a claim of fraud."). The fact that a bankruptcy occurred has no bearing on whether or not veil-piercing or fraud grounds exist.

Piercing the corporate veil is not favored and in general, courts are reluctant to do so. *See In re KZK Livestock, Inc.*, 221 B.R. 471, 478 (Bankr. C.D. Ill. 1998) (citing *CM Corp. v. Oberer Dev. Co.*, 631 F.2d 536 (7th Cir. 1980)); *In re Kevin W. Emerick Farms, Inc.*, 201 B.R. 790 (Bankr. C.D. Ill. 1996). Accordingly, a party bringing a veil-piercing claim bears the burden of showing that the corporation is in fact a "dummy or sham" for another person or entity. *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 278 Ill. App. 3d 1084, 215 Ill. Dec. 931, 664

---

[4] The phrase "deepening insolvency" appears to have its origin in the 1983 case of *Schacht v. Brown*, when the United States Court of Appeals for the Seventh Circuit observed that "[t]he corporate body is ineluctably damaged by the deepening of its insolvency, through increased exposure to creditor liability," and described it as "an injury to the [debtor's] corporate property from the fraudulent expansion of corporate debt and prolongation of corporate life." 711 F.2d 1343, 1350 (7th Cir. 1983).

[5] *See Smith v. Arthur Andersen LLP*, 421 F.3d 989 (9th Cir. 2005) (wherein the Ninth Circuit held that a trustee could pursue claims against officers and directors, attorneys, auditors, and investment bankers of a debtor under a deepening insolvency theory for having squandered money on an unviable business plan, and wherein the parties eventually settled for over $180 million); *In re LTV Steel Co., Inc.*, 333 B.R. 397, 421 (Bankr. N.D. Ohio 2005) (holding that a defendant may be liable for "deepening insolvency" where defendant's conduct, either fraudulently or even negligently, prolongs life of corporation, thereby increasing corporation's debt and exposure to creditors).

N.E.2d 328, 331 (Ill. App. Ct. 1996). The Claimants have failed to prove this burden of proof or offer any convincing arguments why this court should hold the Debtor individually liable for MBI's debts. *See also Plastic Film Corp. of Am., Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001) ("[T]he fact that a corporation has only one single shareholder is not proof that the corporation is the 'alter ego' of that shareholder."); *Melko v. Dionisio*, 219 Ill. App. 3d 1048, 162 Ill. Dec. 623, 580 N.E.2d 586, 595 (Ill. App. Ct. 1991) (noting that "the mere allegation that [defendant] was a dominant or sole shareholder is insufficient to enable a court to disregard the separate corporate existence"). Where there is no evidence of any misrepresentation, no attempt to conceal any facts, and the parties possess a total understanding of all of the transactions involved, Illinois courts will not pierce the corporate veil in a breach of contract situation. *Main Bank of Chicago v. Baker*, 86 Ill.2d at 205-06, 56 Ill. Dec. 14, 427 N.E.2d at 101-02 (1981).

Under Illinois law, a corporation is presumed to be "separate and distinct from its officers, shareholders, and directors, and those parties will not be held personally liable for the corporation's debts and obligations." *Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.*, 371 Ill. App. 3d 1019, 309 Ill. Dec. 686, 864 N.E.2d 927, 941 (Ill. App. Ct. 2007). Illinois courts may pierce a corporation's veil of limited liability only when there is "such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist[,]" and when "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985) (quoting *Macaluso v. Jenkins*, 95 Ill. App. 3d 461, 50 Ill. Dec. 934, 420 N.E.2d 251, 255 (Ill. App. Ct. 1981) (alteration in original)).

In the case at bar, Claimants do not allege such a fiction of separate corporate existence and the court will not infer one from the limited facts before it. *See United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not this court's responsibility to research and construct the parties' arguments.").

As to fraud, in *Ashcroft v. Iqbal*, the Supreme Court held that claims were not adequately pleaded against a high-ranking official of a large organization where the plaintiff alleged in a conclusory fashion that the official "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff] to harsh conditions of confinement" and was the "principal architect" of the policy responsible for the plaintiff's alleged harms. 556 U.S. 662, 680-81.

Here, Claimants allege in a conclusory manner that as the 100% shareholder, sole director, CEO and President of MBI, the Debtor participated in and knowingly permitted MBI's decision to withhold Claimants' wages. Such is not sufficient to plead fraud under *Iqbal*, and fails to meet the standard under the Wage Act. *Id.*; *see also Bohr v. Corrigan Moving Sys.*, No. 09C4281, 2009 WL 3517748, at *1-2 (N.D. Ill. Oct. 29, 2009) (granting dismissal where plaintiff named individual defendant based solely on his managerial position); *Corso v. Suburban Bank & Trust*, No. 03C9424, 2006 WL 418655, at *7-8 (N.D. Ill. Feb. 16, 2006) (to be individually liable under the Wage Act, corporate officers, including the chairperson of the board, must be involved in the actual decision to deny compensation); Fed. R. Civ. P. 9(b) (A heightened level of pleading is imposed for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *compare Stafford*, 63 F.3d at 1440-41 (Wage Act claim permitted

where individual defendant received information from plaintiff and personally inquired about compensation that continued to go unpaid); *with Barner v. City of Harvey*, No. 95C3316, 1996 WL 199745, at *10-11 (N.D. Ill. Apr. 23, 1996) (dismissal denied where complaint alleged that individual defendants affirmatively "refused" to pay wages, giving "rise to the inference that Defendants consciously and intentionally chose not to pay Plaintiffs' benefits").

There are also sound policy reasons to reject the Claimants' arguments.[6] Were this court to adopt the Claimants' arguments, the court would be supporting the notion that once a CEO (or other controlling person) recognizes liquidity issues, he or she should immediately cease operations in order to avoid potential liability. Nothing in the American system of jurisprudence regarding insolvency matters supports such a claim. In light of the Seventh Circuit's guidance that "nothing mandates an 'all or nothing theory' of insolvency," this argument does not stand. *LaSalle Bank Nat. Ass'n v. Doctors Hosp. of Hyde Park, Inc.*, 04C4319, 2005 WL 1766370 (N.D. Ill. July 21, 2005), *aff'd sub nom. In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421 (7th Cir. 2007); *see also Stafford v. Puro*, 63 F.3d 1436 (7th Cir. 1995) ("A corporation's inability to pay amounts due negates a finding that it behaved willfully under the Wage Act.").

If the court were to adopt Claimants' arguments, then in every instance where the risk of bankruptcy may exist, those in control of a corporation must immediately cease operations and send its employees home, or face individual liability. This argument is in direct conflict with the principles of the Bankruptcy Code, which favors rescue of businesses, and is not well taken by the court.

Put another way, in advancing this argument, the Claimants are asking the court to hold the Debtor individually liable based on the Debtor's failure to continue offering personal loans and capitals advances to MBI. Under Claimants' theories, haven undertaken the support of MBI, the Debtor would be charged with continuing that support or face possible liability to MBI's employees. This is, at its essence, veil piercing by estoppel, and such a position is not well taken.

There is no indication or allegation that the Debtor chose to keep MBI alive when the business was clearly beyond recovery, nor does the court find that were such factors present here, Claimants' theory would carry the day. None of the additional considerations of fraud as would be required under *Kowa Printing* or the variety of Seventh Circuit precedent cited herein are present. Instead, the court is cognizant of the fact that, as a credit to our system of insolvency that encourages rescue over liquidation, the system worked and Claimants received more wages than they would have otherwise received if the Debtor failed to infuse his own money into MBI. Absent any

---

[6] This exact point was noted by the Third Circuit Court of Appeals in *Belcufine v. Aloe*, 112 F.3d 633 (3d Cir. 1997) (holding that corporate officers were not personally liable for unpaid vacation and retirement benefits under the Pennsylvania Wage Payment Act following the corporate entities filing for bankruptcy protection). The *Belcufine* court further noted that holding the individual corporate officers liable where the corporate employer was in bankruptcy, and thus unable to pay, would result in "staggering personal liability for corporate officers" which in turn would produce a "serious incentive for corporations to avoid locating in Pennsylvania." *Id.* at 640, n.9. The court was unwilling to impose individual liability "without clear indication from the legislature that its intent was to impose such a regime." *Id.; see also Leonard v. McMorris*, 63 P.3d 323 (Colo. 2003) (wherein the Colorado Supreme Court held that corporate officers are not personally liable for a corporation's unpaid wages to its employees under the Colorado Wage Claim Act, regardless of whether the employer is or is not in bankruptcy.).

indication of fraud or misappropriation of funds, the court will not subject the Debtor to personal liability solely because he provided such much needed financing to MBI. To hold otherwise would "discourage those most interested in a corporation from attempting to salvage it through an infusion of capital." *Mobile Steel*, 563 F.2d at 701.

For all of these reasons, the court finds the language of the Wage Act and sound principles of Illinois corporate and federal bankruptcy law prevent the Debtor from being held individually liable for the Claimants' wage claims based on the facts presented in this Case.

## CONCLUSION

For all of the foregoing reasons, the court concludes that the Trustee's Objections are well taken. A separate order will be issued, concurrent with this Memorandum Decision, sustaining the Trustee's Objections.

Dated: February 12, 2013

Hon. Timothy A. Barnes
United States Bankruptcy Judge